CITY OF TYLER ET AL. v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY.

No. 1499. Decided February 15, 1906.

**1.—Statute of Fraud—Contract Performed Within Year.**

A contract which by its terms is capable of being and has been fully performed by one party within a year is not within the terms of article 2543, Revised Statutes, invalidating "any agreement not to be performed within one year from the making thereof" unless in writing and signed by the party to be charged therewith. (Pp. 497–499.)

**2.—Same—Case Followed—Case Overruled.**

Brazee v. Woods, 35 Texas, 302, followed, and the contrary intimation in Weatherford, M. W. & N. W. Ry. Co. v. Wood, 88 Texas, 194, disapproved. (Pp. 498, 499.)

**3.—Statutory Construction.**

The language of article 2543, Revised Statutes, being taken from the English Statute of Frauds, should be presumed to have intended the meaning it was construed to bear by the courts of England before its adoption in Texas; and, this construction having been followed in Texas, its subsequent reenactment in the Revised Statutes, without change of language, should be taken as a legislative adoption as so construed. (P. 498.)

**4.—Railway—Contract—Removal of Offices and Shops.**

A railway company which has bound itself by contract to maintain its general offices and shops at a named place, is prohibited from moving them

therefrom by article 4367, Revised Statutes, and can be compelled by injunction to so maintain them.   (Pp. 499–502.)

**5.—Same—Injunction—Continued Supervision.**

The court will not anticipate such difficulty in securing obedience to its injunction against the removal by a railway company of its general offices and machine shops as to require of it an impracticable oversight and control of the company.   (Pp. 500, 501.)

**6.—Statute—Public Policy.**

It is the duty of courts to enforce the public policy of the state as disclosed by its legislation, not to give supposed public policy precedence over a valid statute.   (P. 501.)

**7.—City as Trustee for Citizen.**

A city may be made by contract such a depositary of the rights and financial interests of its citizens as to enable it to maintain suit to protect them.   (P. 501.)

Error to the Court of Civil Appeals for the First District, in an appeal from Smith County.

The city of Tyler and others sued the railway company and appealed from a judgment for defendant.   On its affirmance the company obtained writ of error.

*H. Chilton, Johnson & Edwards* and *Ben B. Cain,* for plaintiffs in error.—The Statute of Frauds does not apply to a contract which was to be and was performed on one part within twelve months from the making thereof and which is in process of performance by the other party, especially in a suit in equity to enjoin a threatened breach thereof. Morris v. Gaines, 82 Texas, 258; Westfall v. Perry, 23 S. W. Rep., 741; Sorrells v. Goldberg, 78 S. W. Rep., 711; Ponce v. McWhorter, 50 Texas, 572; Warner v. Gulf, C. & S. F. Ry. Co., 54 Fed. Rep., 1064; Botkin v. Middlesborough, 66 S. W. Rep., 747.

It is the public policy of this state, as embodied in the acts of the legislature, that the machine shops and general offices of railroads should be permanently maintained at a fixed point and that such offices and machine shops shall not be removed from the place where such offices or shops shall have been established by contract for valuable consideration.   Rev. Stat., art. 4367; Texas & St. L. Ry. Co. v. Robards, 60 Texas, 549; International & G. N. Ry. Co. v. Dawson, 62 Texas, 261; Missouri, K. & T. Ry. Co. v. Doss, 36 S. W. Rep., 497.

The courts will not refuse to enforce such a contract as the one in this case by injunction, although it may involve the exercise of discretion and supervision and may run through many years.   Franklin Tel. Co. v. Harrison, 145 U. S., 460; Union P. Ry. Co. v. Chicago, etc., Ry., 163 U. S., 564; Louisville & N. Ry. v. Mississippi & T. Ry., 22 S. W. Rep., 920; South & North Ry. v. Highland, 13 So. Rep., 682; Southern Cal. Ry. v. Rutherford, 62 Fed. Rep., 796; Kelly v. Nypano Ry., 200 Pa.. St., 229; Prospect Park v. Coney Island Ry., 39 N. E. Rep., 17; Joy v. St. Louis, 138 U. S., 1.

The Court of Civil Appeals erred in holding that the statutory enactment of this state in regard to contracts for the location and keeping of general offices and machine shops of railroad companies, whereby

railroad companies are required to maintain and keep their general offices and machine shops at the place where they have contracted so to keep them, do not apply to the contracts made with plaintiffs in error by said railway company for the perpetual location and operation of said offices and shops in the city of Tyler. Rev. Stat., arts. 4367, 4368, 4369, 4376; Joy v. St. Louis, 138 U. S., 1; Franklin Tel. Co. v. Harrison, 145 U. S., 460; Union Pac. Ry. Co. v. Chicago, etc., Ry. Co., 163 U. S., 564; Schmidt v. Louisville & N. Ry. Co., 41 S. W. Rep., 1015; Anderson v. Rowland, 44 S. W. Rep., 911; Louisville & N. Ry. Co. v. Mississippi & T. Ry. Co., 22 S. W. Rep., 920; South & North Ry. Co. v. Highland, 13 So. Rep., 682; Kelly v. Nypano Ry. Co., 200 Pa. St., 229; Southern Cal. Ry. Co. v. Rutherford, 62 Fed. Rep., 796; Chicago, etc., Ry., v. New York, etc., Ry. Co., 24 Fed. Rep., 516; Prospect Park v. Coney Island Ry. Co., 39 N. E. Rep., 17; Newcomb v. Norfolk & Western Ry. Co., 179 Mass., 450; Ruddick v. St. Louis, K. & N. W. Ry. Co., 116 Mo., 25; Blanchard v. Detroit, L. & L. M. Ry. Co., 31 Mich., 33; 2 High on Injunc., secs. 1135, 1164, 1165 (3d ed.); Rev. Stat., arts. 2989, 3014; Sumner v. Crawford, 91 Texas, 129; Green v. Gresham, 53 S. W. Rep., 383; McFarland v. Wilder, 54 S. W. Rep., 267.

*E. B. Perkins, Marsh & McIlwaine, Head & Dillard, Finley, Knight & Harris,* and *Glass, Estes & King,* for appellee.

Any contract, undertaking or agreement, which by its terms is not to be performed within one year, and incapable of being performed within one year, is void under our statute of frauds and can not be enforced. Moody v. Jones, 37 S. W. Rep., 379; Mila v. Rio Grande & E. P. Ry., 37 S. W. Rep., 165; Brown v. Farmers' Bank, 31 S. W. Rep., 216; same case, 31 S. W. Rep., 285; Akins v. Hicks, 83 S. W. Rep., 75.

The doctrine that performance by one of the parties will take the contract out of the statute of frauds, is not applicable to the class of contracts here in question, but is confined to contracts relating to the sale of lands where possession is given and valuable improvements have been made thereon, so that the refusal to specifically perform the contract would operate as a fraud upon the other party to the contract. Wahl v. Barnum, 22 N. E. Rep., 280; Weatherford & M. W. Ry. v. Wood, 88 Texas, 193; Eaton on Equity, sec. 275; Cram v. Thompson, 91 N. W. Rep., 483; Jones v. National Cotton Oil Co., 72 S. W. Rep., 248.

Payment of the consideration by one of the parties to a contract does not take the case out of the statute of frauds. Pomeroy on Spec. Performance (2d ed.), sec. 112; Garner v. Stubblefield, 5 Texas, 561; Wood v. Jones, 35 Texas, 64; Bradley v. Owsley, 74 Texas, 69; Ray v. Young, 13 Texas, 552; Moore v. Powell, 25 S. W. Rep., 472.

Public policy, both as a matter of general law and as manifested by the statutes of this state, leaves railroad companies free to change the location of their general offices and machine shops, except where the location of same has been made in consideration of the issuance of bonds by the county in which such location is made. In the latter instance the right to change is restricted by our statute. Rev. Stat.,

arts. 4367, 4376; Texas & Pac. Ry. v. City of Marshall, 136 U. S., 393; Texas & Pac. Ry. v. Scott, 77 Fed. Rep., 726; Northern Pac. Ry. v. Dustin, 142 U. S., 492; Beasley v. Texas & P., 115 Fed. Rep., 952; Beasley v. Texas & P., 191 U. S., 492; Northern Pac. Ry. v. Washington, 142 U. S., 492.

Under the laws of Texas all railway companies have the absolute right to change the location of their general offices at pleasure, except in cases where the general offices were located in a county that had aided said railway company by the issuance of bonds in consideration of such location. Rev. Stat., art. 4376.

This article of the statute is a part of every contract entered into after its passage, relating to the establishment and maintenance of general offices of railroad companies. Jones v. National Cotton Oil Co., 72 S. W. Rep., 248; Edwards v. Kearzey, 96 U. S., 596.

It is contrary to public policy for railway companies to contract to keep their general offices or machine shops at one place forever. Texas & P. Ry. Co. v. City of Marshall, 136 U. S., 393.

A court of equity will not interfere to prevent the removal of the general offices of railway companies or the machine shops of railway companies to such location as said companies think most advantageous to them, but will leave the parties aggrieved to their action at law for · damages. Texas & P. Ry. Co. v. City of Marshall, 136 U. S., 393; Beasley v. Texas & P., 115 Fed. Rep., 952; Beasley v. Texas & P. Ry. Co., 191 U. S., 492.

BROWN, ASSOCIATE JUSTICE.—The city of Tyler, a municipal corporation organized under the laws of Texas, Johannah Pabst and W. H. and Sue Cousins instituted this suit in the District Court of Smith County against the St. Louis Southwestern Railway Company of Texas, the Tyler & Southeastern Railway Company, and a number of individuals not necessary to mention here, to establish a contract alleged to have been made with the St. Louis Southwestern Railway Company of Texas for the location and maintenance and perpetual operation of its general offices and main machine shops and roundhouses in the said city of Tyler. Plaintiffs sought and obtained an injunction from the said court restraining the St. Louis Southwestern Railway Company of Texas from removing its general offices, machine shops and roundhouses from the said city of Tyler; and said petition sought a specific performance of said contract, compelling the railway company to continue the maintenance in the said city of its said general offices, machine shops and round houses. The allegations of the petition need not be more specifically set out—they were sufficient to admit evidence to sustain the verdict of the jury and the conclusions of fact filed by the judge.

The defendants answered by general demurrer and by special exceptions to the petition, and to the merits opposed a general denial and a special answer, in which it was alleged that the St. Louis Southwestern Railway Company of Texas acquired the said property by judicial sale, free from all contracts and obligations of its predecessors as the owners thereof. And specifically denying the alleged con-

tract, the answer averred that if any such contract was made, as claimed in the petition, then it was verbal, and no memorandum in writing was made and signed by the said railway company, and that the said contract was incapable of being performed within one year from the date of the making thereof, wherefore it was void under the statute of frauds. It was also alleged by the railway company that it would be against public policy to enforce such a contract against it. We have only stated such part of the pleading as we deem necessary for the decision of the case under the view that we have taken of it.

From the special verdict, the additional findings of fact by the court and the undisputed evidence, we make the following statement of the facts necessary to be considered in determining the issues upon which we think the case should be decided.

In 1879 the city of Tyler was, and since that time has continued to be, a municipal corporation, organized under the general laws of the State of Texas, and each of the railroad companies hereinafter named was organized under the laws of this state at the several dates mentioned.

On the 9th day of May, 1880, the Texas & St. Louis Railway Company (the first company), being engaged in constructing a line of railroad in Texas to run through the city of Tyler, entered into an agreement in writing with the city of Tyler and its citizens to the effect that the said railroad company would construct and operate its railroad through the said city, and would establish and *perpetually* maintain in the said city its general offices and its main machine shops and roundhouses; in consideration whereof the citizens of the said city and the city of Tyler agreed to furnish the right of way through the corporate limits of the city, the citizens to pay in cash $4,000 and to furnish eight acres of land, to be selected by the said railroad company, upon which the machine shops and roundhouses might be constructed. The city of Tyler and the citizens complied with the contract, the city giving the right of way over one of its streets and the citizens paying the $4,000. Johannah Pabst, a feme sole, and W. H. Cousins and his wife, Sue Cousins, conveyed to the railroad company eight acres of land, all of which were accepted by the said railroad company. The railroad company constructed its road upon the street designated by the city, and its general offices, machine shops and roundhouse were located in the said city in accordance with the said contract, and maintained the same until its property was sold.

In 1886, in a suit pending in the United States Circuit Court against the Texas & St. Louis Railway Company, its property was placed in the hands of a receiver, and subsequently, by order of the court in that case, the said railroad and all property belonging to it were sold and purchased by William Mertens and others, styled "bondholders' committee," for the purpose of organizing another railroad company. Soon thereafter the Texas & Arkansas Railway Company of Texas (the second company) was organized under the general laws of the State of Texas. In the charter Texarkana was designated as the

place at which the general offices of the company should be located. All of the property of the Texas & St. Louis Railway Company was then conveyed to the Texas & Arkansas Railway Company of Texas, which received the same and entered into possession thereof, operated and used the railroad tracks, the machine shops and roundhouse situated in the said city of Tyler; but it maintained its general offices at the city of Texarkana during the time it owned the said property. The city of Tyler instituted a suit against the second company in the district court of Smith County, and procured an injunction prohibiting the removal of the general offices, machine shops and roundhouses of the said road from the city of Tyler. This suit remained on the docket of the court during the time the second company owned and operated the said railroad.

In the year 1889, in a suit instituted in the Circuit Court of the United States against the Texas & Arkansas Railway Company of Texas, all of the property of the said company was placed in the hands of a receiver, and, by order of the said court, all of the property of the said company was, on the 23d day of October, 1890, sold by the receiver and purchased by Louis Fitzgerald, purchasing trustee.

On the 12th day of January, 1891, the St. Louis Southwestern Railway Company filed its charter with the secretary of state, and thereafter all of the property of the second company was conveyed to this, the third company, under which conveyance it received the railroad running through the city of Tyler, the machine shops, roundhouses, and the eight acres of land which had been conveyed originally to the first company, and the said third company took charge of and operated the said railroad, machine shops and roundhouses from the time of the conveyance to the present time.

On the 10th day of February, 1891, J. A. Edson, the vice-president and general manager of the St. Louis Southwestern Railway Company, entered into a contract with the city of Tyler and with the citizens of the said city, with Johannah Pabst, and with W. H. Cousins and his wife, whereby the said Edson, on behalf of the third company, verbally agreed that the said company should carry out and perform all of the provisions and stipulations of the contract of 1880, made with the first company; in consideration of which the city of Tyler and the citizens of said city agreed that the said city would close up a certain street and turn over the same to the said railroad company for its exclusive use, and that the citizens of Tyler would, upon the terms agreed upon, secure for the said railroad company twenty acres of land in addition to the eight acres before conveyed. In pursuance of that contract the city of Tyler did, within one year from the date of the said contract, dismiss the suits pending against the Texas & Arkansas Railway Company, and did close up the street agreed upon, and surrendered the same to the said railroad company for its exclusive use; and the citizens of Tyler did, by contribution of funds and the action of certain persons representing them as trustees, secure the twenty acres of land in addition to the eight acres before conveyed, and did convey the said land to the said railroad company. The said railroad company took possession of the said

street and the twenty acres of land, and continued to occupy and use the same from that time to the institution of this suit; and the said railroad company did, in accordance with the said agreement, remove the general offices of the railroad company and establish the same at the city of Tyler, in accordance with the provisions. of the charter of the said railroad company, and has since maintained the same at Tyler; but on or about the 9th day of April, 1902, the third company gave notice of an intention to amend its charter so as to remove its general offices from Tyler to Texarkana.

The case was submitted to a jury on special issues, which were answered, after which the trial judge filed additional conclusions of fact, and entered judgment for the defendants, which was affirmed by the Court of Civil Appeals.

A number of interesting questions have been presented and ably discussed by counsel on both sides, which it will not be necessary for us to pass upon, as we are of opinion that the rights of the parties depend upon the validity of the verbal contract made between the St. Louis Southwestern Railway Company of Texas and the plaintiffs in error in 1891. Does that contract come within the terms of article 2543, Revised Statutes, subdivision 5, in effect that a suit can not be maintained "upon any agreement which is not to be performed within the space of one year from the making thereof," unless the same be in writing, and signed by the party to be charged therewith?

It is the settled rule of construction in England that a contract which by its terms is capable of being performed within one year from the date of its making, by one party, and which has been fully performed by such party within the year, is not within their statute of frauds, which is in the same language as ours. Donellan v. Read, 3 Barn. & Ad., 899, 23 Eng. Com. L. R., 391; Smith v. Neale, 89 Eng. C. L. R., 66; Cherry v. Heming, 4 Ex., 631.

The English construction of that clause of the statute of frauds which is by Mr. Reid denominated the "one-side rule," is followed by the courts of the following states: Alabama, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, Rhode Island, South Carolina, Texas, Virginia and Wisconsin. Out of the great number of decisions upon this question which are to be found in the reports of those states, we cite the following as pertinent to the question presented in this case: Rake v. Pope, 7 Ala., 161; Johnson v. Watson, 1 Kelly (Ga.), 348; Western U. Tel. Co. v. Chicago & P. R. R. Co., 86 Ill., 246; Saum v. Saum, 49 Iowa, 704; Bell v. Hewitt, 24 Ind., 280; Berry v. Graddy, 58 Ky. (Metc.), 553; Langan v. Iverson, 80 N. W., 1051; Winters v. Cherry, 78 Mo., 344; Kendall v. Garneau, 55 Neb., 403; Robbins v. McKnight, 1 Hal. Ch., 642; Gee v. Hicks, Rich. Cases (S. C.), 5; Brazee v. Wood, 35 Texas, 302; McDonnell v. Home Bitters Co., 1 Civil Ct. App., sec. 1159; Westfall v. Perry, 23 S. W. Rep., 740; McClellan v. Sanford, 26 Wis., 595; Seddon v. Rosenbaum, 85 Va., 933.

The courts of Massachusetts, Michigan, New York, Vermont and

West Virginia hold the contrary rule; that is, that a verbal contract which is not capable of being performed by both parties within one year's time from the date at which it was made is void under the statute of frauds.

Donellan v. Read, which first construed the statute of frauds of that country, was decided in 1832, and in 1840 the congress of the Republic of Texas embodied the same language that was construed in that case in the statute of frauds enacted by that congress, on the 16th day of March, 1840. So closely did the congress follow the English statute that the conclusion is irresistible that the Texas statute was in fact copied from that of England. Hart Dig., 1451. It is fair to presume that the members of the congress which enacted that law were advised of the construction which the courts of England had placed upon the language they then embodied in the statute of frauds of the republic; and we may also presume that the legislators used these words with the intent that they should receive the same construction that had been placed upon them by the English court. Moffett v. Moffett, 67 Texas, 642; Johnson v. Hanscom, 90 Texas, 321; Morgan v. Davenport, 60 Texas, 234; Munson v. Hallowell, 26 Texas, 475; Snoddy v. Cage, 5 Texas, 106; Trigg v. State, 49 Texas, 645; Brothers v. Mundell, 60 Texas, 240.

In 1871 the clause of our statute of frauds which is involved in the examination of this question was construed by the Supreme Court of this state in conformity to the English construction, and the decision of our court was based upon Donellan v. Read and other English cases. Brazee v. Wood, supra. In 1879 the Revised Statutes of Texas were adopted by the Texas Legislature, which embodied the law of 1840, no change whatever being made in the terms of that law. Art. 2543, Rev. Stat. The Revised Statutes were not simply a compilation of the laws, but were the work of five eminent attorneys of the state, who were authorized by the statute to make such changes as might be necessary, and to report the same to the legislature. They made numerous changes, but reported that chapter was unchanged. The legislature adopted it as reported.

In view of the fact that the construction which the English courts placed upon the English statute had been relied upon and quoted in the Texas case in 1871, and that, under this construction of our own state court, as well as that of the English courts, the legislature used the same language in reenacting the law in 1879 and in 1895, we are constrained to give the language of our statute the same meaning, and hold that the contract now under consideration, being by its terms capable of performance by the city of Tyler, its citizens and others interested therein within one year from the date it was made, and as said contract has been performed by the said city, its citizens and others interested with it within one year's time, it is not embraced within the terms and meaning of our statute of frauds, but is a valid contract, binding upon the said railroad company. In Munson v. Hallowell, before cited, speaking of the construction of another statute, Judge Moore said: "Whether the construction here indicated is the one we should place upon the statute if it were a question of first im-

pression, unaffected by previous judicial opinion, is not now necessary to be determined. Its construction has been settled by a long series of decisions, reaching back in England and America to the time of its enactment. If under these circumstances we were to give it a different interpretation from that which it has heretofore uniformly received, we think we should with much more propriety be subject to the charge of judicial legislation, than when we give it the construction which has heretofore almost invariably been given to it, although its mere letter might lead to a different conclusion."

In Weatherford, M. W. & N. W. Ry. Co. v. Wood, 88 Texas, 194, Judge Denman briefly refers to the question which we have had under consideration, and intimates an adverse opinion to that which we have expressed; but the question was not involved in that case, and an examination of the opinion of that learned jurist will show that he did not investigate the question with his usual care, for the reason that it was not necessary to be decided. We have found no decision of this court contrary to the conclusion that we have reached.

This brings us to the consideration of the effect that article 4367, Revised Statutes, has upon the rights of the parties under the contract, found by the jury to exist. That article reads as follows: "Every railroad company chartered by this state, or owning or operating any line of railway within this state, shall keep and maintain permanently its general offices within the State of Texas at the place named in its charter for the locating of its general office; and if no certain place is named in its charter where its general offices shall be located and maintained, then said railroad company shall keep and maintain its general offices at such place within this state where it shall have contracted or agreed or shall hereafter contract or agree to locate its general office for a valuable consideration; and if said railroad company has not contracted or agreed for a valuable consideration to maintain its general office at any certain place within this state, then such general offices shall be located and maintained at such place on its line in this state as said railroad company may designate to be on its line of railway And such railroads shall keep and maintain their machine shops and roundhouses, or either, at such place or places as they may have contracted to keep them for a valuable consideration received; and if said general offices and shops and roundhouses, or either, are located on the line of a railroad in a county which has aided said railroad by an issue of bonds in consideration of such location being made, then said location shall not be changed; and this shall apply as well to a railroad that may have been consolidated with another as to those which have maintained their original organization."

It will be observed that by the terms of that article the general offices of every railroad company owning or operating a railroad in this state shall be kept at some place in this state; first, at the place named in its charter; and second, if no place is named in the charter, and such railroad company has for a valuable consideration contracted to locate its general offices at a particular place, then such offices must be kept and maintained at such place. Both by the charter and by the terms of the contract the general offices of the St. Louis South-

western Railway Company of Texas were located at the city of Tyler, and the emphatic mandatory language of the statute is that the said company "shall keep and maintain" its general offices at that place. But it is claimed by the railroad company that under authority to amend its charter it may remove its offices from the city of Tyler. However that might be in the absence of any contract for their location at that place, we think it is quite evident that the provisions of the article above quoted are too definite and emphatic to allow of the construction that the railroad company, by its own act, could thwart the manifest purpose of the law.

By a valid agreement, and for a valuable consideration received by it, the St. Louis Southwestern Railway Company of Texas contracted with the plaintiffs in error and the citizens of Tyler to locate, keep and maintain its machine shops and roundhouses at that city. The statute provides that the railroad company "shall keep and maintain its machine shops and roundhouses at such place or places as they may have contracted to keep them for a valuable consideration received." Such explicit language does not admit of construction, nor does it require argument to enforce its meaning. The contract and the law operate to fix beyond the control of the railroad company the place at which its machine shops and roundhouses must be kept and maintained. But it is said that the provisions of the succeeding clause of the statute by implication gives authority to remove its general offices and machine shops and roundhouses from that place. That clause reads as follows: "And if said general offices and shops and roundhouses, or either, are located on the line of a railroad in a county which has aided said railroad by an issue of bonds in consideration of such location being made, then said location shall not be changed." If the conjunction "or" had been used instead of "and," the language would more clearly express the meaning of the statute; but it is sufficiently clear that the object of the clause last quoted was to apply the same rule to a different class of contracts, and to make clear the rights of the parties under such conditions. While it is true that a bond is a contract, it is likewise true that, in common parlance, bonds are not included in the term contracts, nor are they so treated by law writers, or in the decisions of the courts; but they constitute a separate and distinct class usually designated by the term "bonds." The author of that law evidently had in mind different classes of existing cases which called for relief by the legislature, and in the preparation of the bill he showed great care to so separate the different classes to be provided for as to run no risk of confusing the subject. It is quite manifest that the legislature intended by the last clause to apply the same rule to counties that had secured such location by the voting of bonds as had been expressed in the preceding clause in favor of persons and towns which had by contract induced the location at a certain place. The phrase, "shall not be changed," is in effect the same as "shall keep and maintain." It is doubtful if that class of cases embraced in the last clause quoted would have been provided for by the preceding clause.

The St. Louis Southwestern Railway Company of Texas contends

that the courts should not undertake to enforce the specific performance of the contract made in this case, because it would involve the oversight and control of the road by the court, for which purpose the road is not properly equipped. There is no difficulty in enforcing the specific performance of this contract; the judgment of this court perpetuating the writ of injunction heretofore issued in this cause will have the effect to prevent the removal by the St. Louis Southwestern Railway Company of Texas of its general offices and its machine shops and roundhouses for its main line from the city of Tyler, and we apprehend that no compulsory process of the court will be required to secure the maintenance and operation of the general office, machine shops and roundhouses as thus located; nor will there be necessity for the oversight and supervision of any judicial or executive officer of the state in the operation thereof.

It is claimed that the enforcement of such contracts as that sought to be enforced in this case would be against the public policy of the state. On the contrary, to enforce the statute of the state, as will be done in this case, will be to enforce the public policy of the state, as declared by the legislature in the enactment of article 4367. There is no public policy nor public interest to which courts may give precedence over a valid statute enacted by the legislative department.

By the third cross-assignment of error the defendants in error challenge the capacity of the city of Tyler to maintain this suit as trustee for its citizens. There is nothing connected with the purpose of this suit, nor with the aims and objects of the contract upon which it is based, that is inconsistent with the duties and obligations of the municipal government of the city of Tyler. In fact, the purpose of making the contract with the railroad company was to forward the financial interest of the citizens of Tyler, which is likewise one of the principal objects of municipal government. The interest of the city and the interest of its citizens in this matter are entirely harmonious, and, under this state of facts, we think that it is well settled by the authorities that a municipal corporation may be the depository of a contract of this character as the trustee for its citizens. Bell v. Alexander, 22 Texas, 359; Sargent v. Cornish, 54 N. H., 21; Higginson v. Turner, 171 Mass., 591; Phillips v. Harrell, 93 Iowa, 103.

Defendants in error have presented a great number of cross-assignments of error, which we have carefully examined, and find no error pointed out which could by any probability have affected the finding of the jury or the court upon the issue on which we have determined this case; it is therefore unnecessary for us to discuss those assignments.

Having arrived at the conclusion that the verbal contract made by the St. Louis Southwestern Railway Company of Texas, through Edson, its general manager, was binding upon the corporation, and that the statute before quoted, as a matter of law, fixed the rights of the parties under that contract, we deem it unnecessary to express an opinion as to whether or not the St. Louis Southwestern Railway Company of Texas, by purchasing, taking, holding and enjoying the property and privileges which were derived through the contract of 1880, there-

by adopted the same and became bound to carry out its stipulations. This opinion and judgment is limited to the enforcement of the rights of the parties under the verbal contract made in 1891 and article 4367 of the Revised Statutes.

The special verdict of the jury and the findings of the judge show no ground upon which to enter any judgment against the Tyler & Southeastern Railway Company, R. H. Bowron, James Beattie, R. C. Hancock, P. H. Ellenweider, J. F. Lehane, R. S. Fife, S. J. Douglas, A. B. Ligget, Wm. Moseby, J. W. Hogan, R. D. Cobb, S. W. Graves, J. S. Berry, M. L. Lynch, L. P. Bogelma, W. H. Weeks, Milton Brown, O. K. Wheeler, B. F. Yowell and W. J. Miller. It is therefore ordered and decreed that the judgment of the district court as to the parties named be in all things affirmed, and that they recover of the plaintiffs in error all of their costs in the different courts.

We conclude that the district court erred in rendering judgment in favor of the St. Louis Southwestern Railway Company of Texas against the plaintiffs in error, and we therefore reverse the said judgment as to said railroad company; and it being the duty of this court to enter such judgment upon the verdict of the jury and the findings of the judge as the district court should have entered, it is hereby adjudged and decreed that the said city of Tyler, for and on behalf of its citizens, and the said Johannah Pabst and W. H. Cousins and Sue Cousins, his wife, recover judgment against the St. Louis Southwestern Railway Company of Texas, that said railroad company shall keep and maintain in the city of Tyler its general offices, and shall keep and maintain its machine shops for its main line in said city, and it is ordered that the injunction heretofore granted in this cause by the judge of the district court be perpetuated. It is also ordered that the plaintiffs in error recover of the said railroad company all costs by them expended in all of the courts.

*Reversed and remanded.*