**FENNER, BEANE & UNGERLEIDER v. DONOSKY et al.**

No. 2845.

Court of Civil Appeals of Texas. El Paso. June 22, 1933.

Rehearing Denied July 13, 1933.

A. S. Wyllie, of New York City, and Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellants.

Allen & Allen, of Dallas, for appellees.

PELPHREY, Chief Justice.

This suit was instituted in the 116th district court of Dallas county, Tex., by appellees, M. M. Donosky, H. M. Northcott, and W. L. Saling, against the firm of appellant, seeking specific performance of a contract to repurchase certain bonds.

Appellees' original petition contained the following allegations:

"I. That plaintiffs H. M. Northcott and W. L. Saling are residents of Dallas County, Texas, and the plaintiff M. M. Donosky is a resident of New York City, New York; that the defendant, Fenner, Beane & Ungerleider, is a co-partnership composed of Charles E. Fenner, Alpheus C. Beane, Samuel Ungerleider, Joseph N. Carpenter, John L. Julian, Earl H. Hulsey, Robert B. Flynn, John McCorkle, Sully Pecot, R. A. McCord, J. B. Butler, Alfred S. Wiley, J. B. Dyer, Jr., and E. W. Noble, with offices in the City of Dallas, Dallas County, Texas, and Earl H. Hulsey of said partnership as resident partner, being a resident of Dallas, Dallas County, Texas, upon whom service of process may be had."

"II. That said defendants are engaged in the conduct and operation of a general brokerage business in commodities and stocks and bonds and operate and maintain general brokerage offices in the City of Dallas, Dallas County Texas, for the sale and purchase of commodities and stocks and bonds.

"That said defendants, heretofore, to-wit, on or about the 6th day of March, A. D. 1929, organized and incorporated under the laws of the State of Delaware, a private corporation styled Southern National Corporation, said defendants owning all of the common stock of said corporation, consisting of one million shares of no par value, which said business of said Southern National Corporation was to be conducted as that of an investment trust, which said corporation under the management, operation, supervision and sponsorship of said defendants, issued and offered for sale to the public $4,000,000.00 in fifteen years 6% gold bonds or debentures, of which said authorized issue $2,147,000.00 was issued and sold by and through the organization of the defendants then known and operated as Fenner & Beane, under which name and style the said defendants were operating at the time of the organization of said Southern National Corporation, and under which name and style said defendants operated at the times and on the dates hereinafter alleged, and operated until on or about November 13th, A. D. 1931, at which time defendants changed their firm name and style to Fenner, Beane & Ungerleider."

"III. That heretofore, to-wit, on or about the 9th day of April, A. D. 1929, the plaintiffs * *. * made inquiry of said defendants, through their agents and employees, and especially their resident partner, Earl H. Hulsey, with the view of purchasing government bonds or bonds of the United States Government. That upon, or shortly after

making said inquiry of said defendants and of said resident partner, said defendant, by and through its resident partner, Earl H. Hulsey, advised the plaintiffs of the $4,000,-000.00 bond issue of the Southern National Corporation, and represented and informed the plaintiff that said Southern National Corporation was an investment trust created and organized by the defendant, issuing and offering to the public $4,000,000.00 worth of fifteen year gold bonds bearing 6% interest, which funds realized from the sale of said bonds were to be used in the purchase of bonds and stocks and securities listed upon the stock market, and that such bonds and securities so purchased would be held in trust to secure certain gold bonds issued and sold by the Southern National Corporation by and through the defendant, its owners, operators and sponsors. * * * That, said defendant, thereupon, through its resident partner, Earl H. Hulsey, represented to the plaintiffs that the investment in said funds had behind it the resources of and the national reputation of the defendant, and that said bonds could be disposed of at par, but that if they were not disposed of at par, that the defendant, then operating under the name and style of Fenner & Beane, would redeem and re-purchase said bonds of the plaintiffs on or before January 1st, 1931; * * * and, relying upon said agreement upon the part of said defendant, these plaintiffs purchased of said defendants and through said defendant Fifty Thousand ($50,000.00) Dollars worth of gold bonds of the Southern National Corporation, and bonds aggregating the amount of $50,000.00 were issued by said Southern National Corporation to these plaintiffs by and through the defendant, said plaintiffs purchasing and paying therefor the sum of $50,-000.00."

"IV. That some time prior to January 1st, 1930, the market value of said bonds decreased, and that on January 1st, 1931, the market value of said bonds was for less than par, or the amount paid therefor by the plaintiffs, and that the plaintiffs requested of said defendant that they redeem said bonds, but the said defendants failed and refused so to do, the plaintiffs tendering said bonds to said defendant for redemption or re-purchase in accordance with its agreement made with the plaintiffs by and through its resident partner, Earl H. Hulsey, and have since continually tendered said bonds to said defendant, requesting and demanding of said defendant that it carry out its re-purchase agreement and re-purchase said $50,000.00 worth of bonds, all of which said defendant has failed and refused to do, and which said defendant still fails and refuses to do."

"V. Plaintiffs further represent to the court that they have heretofore and here and now tender the said defendant said bonds, as they have been heretofore tendered the same, and that continually since said tender they were, have been and are in position to carry out said sale."

Appellant filed a general demurrer, a general denial, and specially denied the making of any agreement to buy back, redeem, or take up the bonds. They further pleaded that the agreement as alleged was unenforceable because it was within the statute of frauds (Rev. St. 1925, art. 3995); that the cause of action was barred by the two-year statute of limitations (Rev. St. 1925, art. 5526); that appellees had waived their right to enforce the contract; that they were estopped to do so; and that appellees, after knowing that appellants had denied the making of the alleged agreement, had failed to sell the bonds at the then market price and thereby mitigate their damage.

By supplemental petition, appellees demurred specially to the answer of appellants, and further pleaded that the agreement was not within the statute of frauds; that their action was not barred by the 2-year statute of limitations; that they had not waived their right to enforce the contract, and were not estopped to do so; and that they had failed to sell said bonds at the request of appellants.

The jury, upon special issues, found: (1) That Hulsey, at the time the bonds were purchased by appellees, made an agreement with regard to the repurchasing thereof by the firm of Fenner & Beane; (2) that appellants, through Earl H. Hulsey, agreed to repurchase the bonds on or about January 1, 1931, at par; (3) that the firm of Fenner, Beane & Ungerleider was doing business under the firm name of Fenner & Beane in March and April, 1929; (4) that Earl H. Hulsey, at the time the agreement was made, was representing the firm now known as Fenner, Beane & Ungerleider; (5) that the failure of appellees to sell the bonds on January 1, 1931, was reasonably due to statements of appellants; (6) that appellants notified appellees that they would not repurchase the bonds on or about September 8, 1931; (7) that on said date the market value of the bonds was $10,950; (8) that the market value of the bonds on July 7, 1930, was $32,500; (9) that the market value of the bonds of January 1, 1931, was $21,505; and (10) that appellees had not waived their right to sue appellants for damages.

Upon these findings judgment was rendered that appellees recover of and from appellants the sum of $39,050.

Appeal was perfected to the Court of Civil Appeals for the Fifth District and later transferred to this court.

## Opinion.

Appellants' brief contains seventy-five assignments of error and twenty-one propositions thereunder.

In paragraph III of appellees' petition as above quoted it appears that the agreement

was "that said bonds could be disposed of at par, but that if they could not be disposed of at par, that the defendant, then operating under the name and style of Fenner & Beane, would redeem and re-purchase said bonds of the plaintiffs on or before January 1st, 1931, in order that the plaintiffs might meet and discharge their obligation aforesaid."

Appellants specially pleaded that, if the agreement was made, the same was not to be performed within the space of one year from the making thereof, and was therefore within the statute of frauds and unenforceable.

If the performance of the contract within one year is possible, and such performance is consistent with the terms of the contract, then the provision of the statute of frauds pertaining to agreements "not to be performed within the space of one year from the making thereof" will not apply. 20 Tex. Jur. p. 252; Thouvenin v. Lea, 26 Tex. 612; Thomas v. Hammond, 47 Tex. 42; Huggins v. Carey (Tex. Civ. App.) 149 S. W. 390; Bostick v. Haney (Tex. Civ. App.) 209 S. W. 477.

In the case of Thouvenin v. Lea, supra, Thouvenin, the owner of land, made a verbal agreement with Lea by which Lea was to go into possession of the land, have surveys made, and, if he later became dissatisfied, Thouvenin was to pay him for any improvements made on the land. In concluding that the agreement was not within the statute, the court said: "By the contract the appellant agreed, if there was a failure to complete the contract, or for any reason it was abandoned, that he would pay for the improvements made upon the land. There is nothing from which it can be inferred that the failure to complete the contract, (by reducing it to writing, for instance, as was stipulated should be done,) or its abandonment might not occur within a year from the time it was consummated. * * * An agreement which may or may not be performed within a year, is not required by the statute of frauds to be in writing; it must appear from the agreement itself that it is not to be performed within a year."

The court in Thomas v. Hammond, supra, used this language: "In regard to the objection, that the alleged agreement was not to be performed within one year, it is to be observed, that it does not appear from the agreement, as alleged, or as testified to, that it was not to be performed within a year; but that at most it was an agreement which might or might not be performed within a year, and was not therefore required by the statute of frauds to be in writing."

Both of the above cases were cited by the Supreme Court of the United States in Warner v. Texas & P. Railway Co., 164 U. S. 418, 17 S. Ct. 147, 153, 41 L. Ed. 495.

In that case the court had under consideration our statute in connection with a verbal agreement of the railway company to maintain a switch for Warner's benefit as long as he needed it, at the place where he proposed to erect a sawmill.

The court, in holding the agreement not within the statute, said: "The parties may well have expected that the contract would continue in force for more than one year. It may have been very improbable that it would not do so; and it did in fact continue in force for a much longer time. But they made no stipulation which, in terms, or by reasonable inference, required that result. The question is not what the probable, or expected, or actual performance of the contract was, but whether the contract, according to the reasonable interpretation of its terms, required that it should not be performed within the year."

The allegation here being the appellants agreed to redeem or repurchase the bonds on or before January 1, 1931, and the proof showing that they agreed to redeem or repurchase at any time after 90 days from the time the bonds were purchased, the agreement would not, under the above holdings, be required to be in writing.

The agreement here not only does not preclude the performance within a year from the making thereof, but provides that it may be performed at any time after the expiration of 90 days.

We are further of the opinion that the agreement was not within the statute by reason of the fact that by its terms it was capable of being fully performed by appellees within one year from the date of its making, and was in fact performed by them. City of Tyler v. Railway, 99 Tex. 491, 91 S. W. 1, 13 Ann. Cas. 911.

We cannot agree with appellants' contention that the agreement to purchase the bonds by appellees and the agreement to repurchase by appellants was not an entire contract.

In this case it appears that appellants were the organizers of the Southern National Corporation, that they represented that their resources and national reputation were behind it, and that appellants were not only engaged in selling the bonds as brokers, but were interested in the selling of said bonds as part owners thereof.

The cases cited by appellees are, we think, applicable to the facts here involved.

Appellants also contend that the cause of action on the agreement was barred by the 2-year statute of limitations. In deciding this question, we must first decide when any right of action arose under the agreement in favor of appellees.

In Lovenberg v. Henry, 104 Tex. 550, 140 S. W. 1079, 1080, the Supreme Court, in discussing the meaning of the words "on or before" as used in a note, quoted, with approval, the fol-

lowing expression of Judge Cooley in the case of Mattison v. Marks, 31 Mich. 421, 18 Am. Rep. 197: "The legal rights of the holder are clear and certain; the note is due at a time fixed, and it is not due before. True, the maker may pay sooner if he should choose, but this option, if exercised, would be a payment in advance of the legal liability to pay, and nothing more."

Chief Justice Brown, in a concurring opinion in the Lovenberg Case, said: "The terms 'on or before' are in common use to designate the time at which the expressly reserved right of the maker of a contract to pay before maturity ends and when the payee's right to demand payment arises."

■ Applying the above expressions to the agreement involved here, the right to demand a repurchase of the bonds did not arise until January 1, 1931.

The suit, having been filed within 2 years from that date, was not barred.

■ It appears, however, that the trial court, in submitting the agreement to the jury, inquired whether appellants had agreed to repurchase the bonds on or about January 1, 1931.

Such an agreement was neither alleged nor proved, and the issue was therefore erroneously submitted, and calls for a reversal of the judgment.

Certainly an agreement to do something on or about a certain date is not the same as an agreement to do the thing on or before that date.

An agreement to do a thing on or about a certain date means that it will be done at some date near the date specified, either before or after, while an agreement to do the thing on or before a date specified means that it may be done at any time between the making of the agreement and that date, but not thereafter.

Sully Pecot, one of the members of the firm, was called as a witness by appellees, and testified on direct examination that the firm of Fenner, Beane & Ungerleider came into existence on December 1, 1931; that it had never operated before that time; that, prior to that time, he had been connected with the brokerage firm of Fenner & Beane; that four persons belonged to the firm of Fenner, Beane & Ungerleider, who had not belonged to the firm of Fenner & Beane; and that there was no agreement between Fenner, Beane & Ungerleider and Fenner & Beane whereby Fenner, Beane & Ungerleider assumed the obligations of Fenner & Beane.

■ Appellants assert that, by reason of this proof, there was a variance between appellees' allegations and its proof, and, having proved that Fenner & Beane was a separate and distinct partnership from that of Fenner, Beane & Ungerleider, they were not entitled to recover.

Appellees, on the other hand, assert that, they having pleaded that appellants were partners doing business under the firm name and style of Fenner, Beane & Ungerleider, and that at the time of the making of the contract were partners doing business under the name and style of Fenner & Beane, and appellants not having denied the partnership under oath, the partnership was admitted, and no proof was necessary as to partnership. They further contend that they are not bound by the testimony of Pecot by virtue of article 3769c, Vernon's Ann. Civ. St.

The first proposition is, we think, well taken. There having been no denial under oath that the parties were doing business under the name of Fenner, Beane & Ungerleider, or that they were doing business in 1929, under the name of Fenner & Beane, there was no issue upon which proof was admissible.

While we do not agree that article 3769c has the effect contended for by appellees, that is, that evidence solicited from an adverse party has no binding effect upon the party introducing it, yet, under the facts here, we are of the opinion that the testimony elicited from Pecot, in so far as it tended to deny that appellants were doing business as partners under the names and at the times alleged, was inadmissible in the absence of a denial of the partnership, and, not tending to establish any issue needing proof, would not bind appellees.

It follows that there was no variance between pleading and proof and no failure of evidence to support the judgment.

■ It is, however, further asserted by appellants that there were certain members of the firm of Fenner, Beane & Ungerleider who were not made parties to this suit. In view of a retrial of the case, we call attention to the fact that, in order to authorize a judgment against a partnership, it is necessary that all partners be sued. Duncan v. Smith Bros. Grain Co., 113 Tex. 555, 260 S. W. 1027.

We are inclined to the view that the evidence adduced in this case made an issue as to the authority of Hulsey to bind the firm on the contract to repurchase.

The record showing that appellants promoted, created, and to a certain extent operated the Southern National Corporation, that the same minds were directing the affairs of both the partnership and the corporation, it cannot be said as a matter of law that he had no implied power to make the agreement. The evidence of Hulsey and Pecot would, we think, be sufficient to make an issue as to his authority.

For the reasons heretofore given, the judgment is reversed, and the cause remanded.