**ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS et al., Appellants,**

v.

**CITY OF TYLER et al., Appellees.**

**No. 4204.**

Court of Civil Appeals of Texas.

Eastland.

Dec. 15, 1967.

Rehearing Denied Jan. 12, 1968.

See also, Tex., 405 S.W.2d 330.

Ramey, Brelsford, Flock & Devereux, Jack W. Flock, Michael A. Hatchell, Tyler, Jackson, Walker, Winstead, Cantwell & Miller, D. L. Case, Jack Pew, Jr., Dallas, Baker, Botts, Shepherd & Coates, Tom M. Davis, Houston, Clyde W. Fiddes and Roy P. Cosper, Tyler, for appellants.

Troy Smith, City Atty., H. L. McGee, Jr., Fred V. Hughes, Jack Norwood, Tyler, for appellees.

COLLINGS, Justice.

This is an appeal from a judgment of the District Court of Smith County overruling and denying the motion of appellants to vacate, modify or suspend an injunction issued by the said court in the same numbered cause in 1906. The injunction required the St. Louis Southwestern Railway Company of Texas to perpetually keep and maintain its general offices and machine shops within the City of Tyler.

The injunction in question is the result of litigation which began in 1902. In that year the City of Tyler, Johanna Pabst, W. H. Cousins and Sue Cousins brought cause number 5314 in the District Court of Smith County to enjoin the St. Louis Southwestern Railway Company of Texas, (hereafter called the Texas Railroad), from moving its general offices and machine shops from Tyler. The basis of that suit was a contract by which the Texas Railroad, in 1891,

agreed to perpetually maintain its general offices and machine shops in Tyler and Article 4367, Texas Revised Civil Statutes 1895 which provided, in effect, that every railroad company owning or operating any line of railway within this State should keep and maintain permanently its general offices within the State of Texas and keep and maintain their machine shops and roundhouses at such place or places as they may have contracted to keep them.

An injunction was issued concurrently with the filing of the suit on April 20th, 1902 but, when the case was tried on the merits, judgment was rendered dissolving the injunction. This judgment was affirmed by the Court of Civil Appeals, (87 S.W. 238). On appeal to the Supreme Court the judgments of the District Court and Court of Civil Appeals were, in 1906, reversed and judgment was rendered by the Supreme Court granting a permanent injunction, which judgment the court declared should have been rendered by the lower courts. See City of Tyler v. St. Louis Southwestern Ry. Company of Texas, 99 Texas 491, 91 S.W. 1. The injunction decreed:

" * * * that said St. Louis Southwestern Railway Company of Texas shall keep and maintain in said City of Tyler, Smith County, Texas, its General Offices and shall keep and maintain in said City of Tyler its machine shop for its main line: And it is further ordered, adjudged and decreed that the injunction by the judge of the District Court of Smith County, Texas, heretofore granted on to-wit: April 20th, 1902, enjoining and restraining said Defendant in error, St. Louis Southwestern Railway Company of Texas, from removing its General Offices from said City of Tyler, in Smith County, Texas, be and the same is hereby perpetuated * * * "

In 1920, the Congress of the United States passed the Transportation Act of 1920, codified under Title 49 of the United States Code Annotated. It established a uniform system of Federal control and regulation of common carriers engaged in Interstate Commerce and delegated to the Interstate Commerce Commission authority to administer the act. One of the duties conferred on the Commission by Sec. 5(2) of the act was to determine the matter of the approval of any proposed lease of the properties of one common carrier to another, upon terms and conditions which it found "to be just and reasonable." The act also relieved carriers who were parties to such an approved transaction, of certain legal restraints. In 1940 Congress strengthened the power and authority of the Commission in such matters by declaring that its authority was "exclusive and plenary." Since the 1940 amendment the material portion of 49 U.S.C.A. Sec. 5 provides as follows:

"§ 5, par. (2). Unifications, mergers, and acquisitions of control.

"(a) It shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b) of this paragraph—

"(i) * * * for * * * two or more carriers jointly, to purchase, lease, or contract to operate the properties, or any part thereof, of another; * * *.

"(b) * * * If the Commission finds that, subject to such terms and conditions and such modifications as it shall find to be just and reasonable, the proposed transaction is within the scope of subdivision (a) of this paragraph and will be consistent with the public interest, it shall enter an order approving and authorizing such transaction, upon the terms and condition, and with the modifications, so found to be just and reasonable: * * . *.

"§ 5, par. (11). Plenary nature of authority under section. The authority conferred by this section shall be exclusive and plenary * * * and any carriers * * * and any other persons, participating in a transaction approved or authorized under the provisions of this section shall be and they are relieved

from the operation of the antitrust laws and of all other restraints, limitations, and prohibitions of law, Federal, State, or municipal, insofar as may be necessary to enable them to carry into effect the transaction so approved or provided for in accordance with the terms and conditions, if any, imposed by the Commission * * *."

In 1953, the St. Louis Southwestern Railway Company of Missouri, (hereinafter called the Missouri Railroad), filed an application under Sec. 5(2) of the act to lease and operate all the properties of the Texas Railroad. The Missouri Railroad obtained the approval of the Interstate Commerce Commission of a lease which provided that the two companies were released from any obligation to maintain shops and offices at any particular place on any of the lines of the Texas Railroad. The order of the Interstate Commerce Commission approving the lease was made on December 18, 1953 and includes the following language:

" * * * The record is clear that it would be imprudent for the applicant to lease the properties of the Texas company if the effect would be to subject the entire system operations to the requirements of Texas laws and thus prevent it from carrying on its business and locating its offices in a manner most consistent with operating economy and efficiency. *Compliance with the State and municipal laws and contracts as shown herein would hinder economy and efficiency in operation and service to the public and thereby impose an undue burden upon interstate commerce.*" (Emphasis ours)

In connection with its order the Commission made the following findings:

"1. That the proposed lease, and the unification of operations resulting therefrom, will produce substantial economies and promote the efficiency of the applicant's system operations without adverse effect upon the public or other carriers.

2. That the laws of Texas and agreement with the City of Tyler pertaining to maintenance within Tyler or elsewhere in Texas of public and general offices, machine shops, roundhouses or other facilities, have no necessary relation to economy and efficiency in operation or service to the public, but on the contrary would hinder such operation and service and thereby impose an undue burden upon the unified operations and upon interstate commerce."

In May of 1965, the Missouri Railroad announced its intention to coordinate and combine certain departments by moving its treasurer, some engineering personnel, and certain other employees, to locations other than Tyler. As a result the City of Tyler applied to the District Court of Smith County for a contempt citation against the railroad and its officers.

In February of 1966, the Texas Railroad filed in the Supreme Court of Texas a motion seeking an order vacating, modifying or suspending the original 1906 injunction judgment on the basis of changed conditions of both law and fact. After this motion was filed, the Tyler City Commission passed a resolution requesting its city attorney to dismiss the contempt proceedings filed by the city and expressing the city's desire not to contest the motion filed by the railroad in the Supreme Court to modify and vacate the 1906 injunction. The Supreme Court held that it did not have jurisdiction to grant the relief requested by the Railroad Company, but that the District Court which granted the original injunction did have such jurisdiction, and that its action pursuant thereto would be subject to appellate review. (Tex., 405 S.W.2d 330).

Thereafter in accordance with the Supreme Court's holding, appellants filed a motion in the original injunction cause in the District Court of Smith County in number 5414 to vacate, modify or suspend the injunction. It is from the action of the court denying such motion that this appeal is taken. In connection with the rendition

of the judgment appealed from, the trial court filed the following conclusions of law:

"1. I conclude that the Court has jurisdiction over all the parties named as Plaintiffs, intervenors, and Defendants herein, and that all parties necessary to a decision of this matter are before the Court.

2. The Contract in question reported in [99 Tex. 491] 91 S.W. 1 is still in full force and effect and valid and binding upon the railway.

3. The Interstate Commerce Commission cannot legally authorize the railway to violate its contractual obligations as set out in such contract.

4. The statutes (Transportation Act) authorizing the Interstate Commerce Commission to act do not authorize the Commission to deprive the Contract holders under such contract of their contractual rights, or to impair their contractual rights, or impair the obligations of their contract, and, hence the Commission's action and order of December 12, 1953 with reference to removal of the shops and other facilities, being contrary to the terms of such Contract, were not authorized, and are void.

5. I conclude that, as a matter of law, the Interstate Commerce Commission was without authority by its report and order of December 12, 1953, to suspend, annul, vacate, or set aside the injunction of the Supreme Court of Texas issued in 1906 and reported in [99 Tex. 491] 91 S.W. 1."

In several points, appellants contend that the court erred in refusing to vacate, modify or suspend the 1906 injunction because (1) the Transportation Act passed by Congress in 1920 gave the Interstate Commerce Commission exclusive and plenary power in approving leases between railroads to impose such conditions as it deems to be in the public interest, (2) the Interstate Commerce Commission in the exercise of the powers committed to it by Congress has by its order relieved appellants of any statutory or contractual obligation to maintain offices and shops in Tyler, and (3) that the order of the Commission is superior to such statutory and contractual obligation and the injunction issued in support of and based thereon. These points are sustained.

The 1953 order of the Interstate Commerce Commission, by its terms, relieved appellants from any obligation to maintain general offices and shops at Tyler. It superseded the contract here involved and the 1906 injunction. Appellee contends, and the trial court held, that the transportation act of 1920 and amendments thereto did not authorize the commission to impair the obligations of a contract; that the 1891 contract by which appellant Texas Railroad agreed to maintain its general offices and shops at Tyler and the 1906 state court injunction in support thereof are superior to the conflicting order of the Commission. The court therefore held that the order of the Commission was void. Appellees' contentions and the holding of the court in this respect are not well taken.

■ Article 1; Section 8 of the Constitution of the United States grants to Congress " * * * Power * * * To regulate Commerce * * * among the several States." It is held that the power of Congress to regulate commerce is supreme and that such an act by the congress displaces and supersedes any conflicting state laws or regulations. Gibbons v. Ogden, 9 Wheat, 1, 22 U.S. 1, 6 L.Ed. 23 (1824); Simpson v. South Western Railroad Company, 231 F.2d 59, (5 Cir.1956), cert. den., 352 U.S. 828, 77 S.Ct. 41, 1 L.Ed.2d 50 (1956); Schwabacher v. United States, 334 U.S. 182, 68 S.Ct. 958, 92 L.Ed. 1305 (1948); Railroad Commission of Texas v. Querner, 150 Tex. 490, 242 S.W.2d 166 (1951).

■ Contrary to appellees' contention and the holding of the trial court the Interstate Commerce Commission has the power under the transportation act of 1920 and amendments thereto to relieve railroads from the operation of private contracts if it deems such action to be in the public in-

terest. In State of Texas v. United States, 292 U.S. 522, 54 S.Ct. 819, 78 L.Ed. 1402 (1934), it was held by the Supreme Court of the United States that "even explicit charter provisions must yield to the paramount regulatory power of the Congress." Charter provisions obligating a railroad to maintain offices in a state or at a stated place therein, to continue operation of an interstate railroad line or to limit the fare to a specified charge per mile are actually contractual obligations. It is held that such contractual obligations of a railroad with a state municipality or an individual are made subject to the possibility that "Congress might so exert its whole constitutional power in regulating interstate commerce as to render that agreement unenforceable, or to impair its value." Louisville & Nashville Railroad Company v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297 (1911); State of New York v. United States, 257 U.S. 591, 42 S.Ct. 239, 66 L.Ed. 385 (1922); State of Colorado v. United States, 271 U.S. 153, 46 S.Ct. 452, 70 L.Ed. 878 (1926); State of Texas v. United States, supra; Meachem v. Louisville and Nashville Railroad Co., 293 Ky. 642, 169 S.W.2d 830 (1943); Kent v. Civil Aeronautics Board, 204 F.2d 263 (2 Cir., 1953), cert. den. 346 U.S. 826, 74 S.Ct. 46, 98 L.Ed. 351 (1953).

■ Prior court injunctions are likewise subject to the power of Congress to regulate interstate commerce where the public interest is involved. State of Pennsylvania v. Wheeling and Belmont Bridge Co., 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1855); System Federation No. 91, etc. v. Wright, 364 U.S. 642, 81 S.Ct. 386, 5 L.Ed.2d 349 (1961); Mosel v. San Antonio & A. P. Ry. Co., 249 S.W. 893, (CCA 1923, no writ history).

■ In the instant case the Interstate Commerce Commission after due hearing determined that the provisions of the proposed lease between appellant railroads were just and reasonable and consistent with public interest; that compliance with the

1891 contract and the 1906 injunction would hinder economy and efficiency and operation and service to the public and thereby impose an undue burden upon Interstate Commerce. Under these facts the Commission had the power and authority under the transportation act to relieve the railroads from the obligations of the contract to maintain its general offices and shops in Tyler, and to set aside the 1906 injunction. The order of the Commission to that effect was not void. The judgment of the trial court was based, solely, upon its erroneous holding that such order was void and the court therefore erred in rendering the judgment it did. Appellants' first 4 points are sustained. Based upon its findings the court should have rendered judgment vacating and suspending the 1906 judgment. The judgment should, therefore, be reversed and judgment rendered for appellants.

Appellants in other points contend that the court erred in refusing to vacate the injunction on the basis of changed conditions since 1906, including the order of the Interstate Commerce Commission and the conduct of the City of Tyler with reference thereto, as a result of which appellants were induced to act and did act on the belief that they were freed from the restraints of the injunction and contract. We agree with this contention.

■ Appellees urge that the court correctly denied the relief sought by appellants because under the facts and circumstances shown the principles of equity do not entitle appellants to such relief. This contention is not well taken. The trial court found against appellees on the question of the equities involved and filed the following conclusion of law:

"6. Following the case of City of Tyler et al v. St. Louis Southwestern Railway Company of Texas et al, 405 S.W.2d 330 (Supreme Court 1966) and the holdings therein, I conclude that, if the Interstate Commerce Commission had the legal right to enter its report and order herein, and

if such order effectively authorized the lease entered into by the railways, then the facts and circumstances of this case would authorize this trial court, as a matter of equity, to modify or vacate, or set aside the permanent injunction entered in 1906, because of changed conditions."

The lease in question, which was approved by the Interstate Commerce Commission, specifically provided for relief from any obligation created by the contract requiring appellants to maintain offices and machine shops at any particular location. The City Attorney of Tyler was furnished a copy of this lease and the evidence indicates that all of the City Commissioners had knowledge thereof. One of the Tyler City Commissioners and various civic organizations of the City urged the Interstate Commerce Commission to approve the lease. All of these recognized that the Railroad was seeking relief from the contract and from the 1906 injunction. The order and report of the Interstate Commerce Commission was likewise public information in the City of Tyler. It expressly provided for relief from the contract in question, and there is no basis for the contention that the City of Tyler and its inhabitants were not aware that the Railroad sought relief from the contract or that the effect of the order of the Commission was to relieve appellants from any restriction imposed by the contract or by the 1906 injunction.

The record shows that appellants in good faith relied upon the validity of the 1953 order of the Commission approving the lease, that the support of the Tyler community in securing such order from the Commission was instrumental in causing the Missouri Railroad to construct a $1,500,000.00 building in the city and to create 157 new jobs and bring 120 new families to the community. From the date the lease was approved until the contempt proceedings were filed by the city in 1965, the record shows no contention on the part of the municipality or its citizens that they considered the provision of the contract or the injunction to be of any further binding effect or that they challenged the validity of the order of the Interstate Commerce Commission.

There can be no question but that the Missouri Railroad's reliance upon the Commission's authority to relieve it from the contract in question caused appellants to materially alter their position. The lease was based upon a specific condition invalidating the contract upon which the injunction was based, and the City of Tyler which was the beneficiary under the contract and the injunction reaped benefits made possible by the approval of the lease by the Interstate Commerce Commission. After a silence of more than a decade the city could not equitably challenge the order of the Interstate Commerce Commission and the Railroad's change of position and reliance thereon. The trial court properly found that the facts and circumstances shown in this record authorize it as a matter of equity to modify, vacate and set aside the permanent injunction entered in 1906 because of changed conditions.

Appellees, in an able brief, urge numerous other contentions in support of the judgment. Some of these contentions are that the City of Tyler was not bound by the order of the Commission because it was not a party to the hearing, that the 1906 permanent injunction was a final judgment and could not be vacated, and that appellees are barred by limitations, laches and by reason of fraud from securing the relief sought. We have examined the record and find that none of the contentions of appellants in support of the judgment are valid.

The order of the Interstate Commerce Commission and the change as shown by the record require that the 1906 injunction be suspended and vacated.

The judgment is reversed and judgment is here rendered for appellants.