FORT WORTH NEUROPSYCHIATRIC HOSPITAL, INC., Appellant,

v.

BEE JAY CORPORATION, Appellee.

No. 18120.

Court of Civil Appeals of Texas, Fort Worth.

July 12, 1979.

Rehearing Denied Sept. 20, 1979.

Second Motion for Rehearing Overruled Oct. 18, 1979.

Garrett & Burkett and Mike R. Burkett, Fort Worth, for appellant.

Staples & Foster and Ross T. Foster, Hurst, for appellee.

## OPINION

MASSEY, Chief Justice.

Bee Jay Corporation, hereinafter termed Bee Jay, brought suit against Fort Worth Neuropsychiatric Hospital, Inc., hereinafter termed Hospital, for damages because of breach of contract. Trial was to a jury, upon the verdict of which judgment was rendered for Bee Jay for $122,700.00 in damages. Such amount was that by which Bee Jay suffered loss of rentals from a Dr. Dolenz because of Hospital's breach. Hospital appealed.

We affirm.

We have heretofore had an aspect of the case under consideration. *Bee Jay Corp. v. Fort Worth Neuropsychiatric*, 557 S.W.2d 161 (Tex.Civ.App.—Fort Worth 1977, no writ). Upon that occasion our holding was that disposition of the case by a summary judgment was improper; that issues existed making the case one which should be tried on the merits. Such a trial did follow, and it is from the judgment rendered therein that the instant appeal is presented. Observed in our former opinion was that the claim of Bee Jay was that Hospital had violated a sales contract; that the suit of Bee Jay was for Hospital's breach of contract.

Important in the consideration of the appeal is to recognize that rule of law relative to the Statute of Frauds, to-wit: the inhibitory provisions of the statute shall not apply where a fraud would result if repudiation of an oral contract were permitted or where the case is such that the non-enforcement of the contract—or the enforcement of the statute—would, itself, plainly amount to a fraud. *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114 (1921). As it should, the law has supplied a positive rule to insure that an exception to the statute is provided for the prevention of an actual fraud, as distinguished from a mere wrong, which if not prevented would foreclose relief for actual harmful loss. *Kirk v. Beard*, 162 Tex. 144, 345 S.W.2d 267 (1961). See also *"Moore" Burger, Inc. v. Phillips Petroleum Company*, 492 S.W.2d 934 (Tex.1972); and cases annotated under Tex.Dig., "Estoppel", ▮ "(Representations)-Future events".

In the instant case Bee Jay has no right to relief by way of rescission of contract because title to the realty involved has passed into the hands of third persons. However, relief by recourse to remedy of damages for breach of contract is available if the Bee Jay right to make proof by parol evidence is proper, and suffices to prove that character of action. Were that not so there would remain available to Bee Jay the equitable remedy of restitution. Where one person is accountable to another on the ground that otherwise he would unjustly benefit or the other unjustly suffer loss remedy is available in equity if not at law. See Restatement of the Law, *Restitution* (1937).

One reason for our expression upon the law, stated in the paragraph in which we cited *Hooks, Kirk,* and *"Moore" Burger,* is because in the instant case there was an erroneous written lease involved, to be hereafter detailed, and that contract is unenforceable as a writing (as a written lease) because of misdescription of property in-

tended to be leased. That lease, from Bee Jay to a Dr. Dolenz, was for an initial five year period beginning January 1, 1970, plus option for Dolenz to renew and extend the same for a period of five years at same rental as before, to-wit: $1,500.00 per month. The location and identification of the premises stated to be leased was erroneously stated to have been in a Block 3 of a particular survey, when that actually intended as the premises was in a different block. Dr. Dolenz did actually enter upon the premises intended to be leased to him by Bee Jay. He had occupied the premises for over a year before the events which gave rise to the litigation took place. In other words, what we attempt to show is that Dr. Dolenz and Bee Jay understood and took action upon that as to which they had contracted. There has never been dispute between Dr. Dolenz and Bee Jay over their agreement of lease. Indeed Bee Jay, though a corporation, has at all times in fact been the *alter ego* of Dr. Dolenz, who was its president and owner of all the Bee Jay stock. Materiality of that fact does not exist in this case. No fraud was accomplished or even attempted by a misuse of the Bee Jay relationship by Dr. Dolenz as its *alter ego*. No one was ever thereby deceived to his prejudice. Furthermore, until about February 10, 1971, Hospital was also the *alter ego* of Dolenz, who was its president and owner of all the stock. Materiality of that fact is not a factor in this case.

Background information would serve to clarify what might seem to be a very complicated situation. Reflected in the record is that in the conduct of the business of a psychiatric hospital the hospital frequently desires that physicians in psychiatric practice maintain offices upon its premises; of course that means those physicians whose patients in sufficient number to become profitable to the hospital are directed to be hospitalized or are expected to be so directed. Therefore, it is probable that even without any contract relative thereto Dr. Dolenz would have been supplied with substantially the same office premises as those deemed to have been provided by contract

of Bee Jay. That is, it would have been probable up to the time circumstances of dispute developed, about two and one-half years later, when Dr. Dolenz' personal difficulties with new management of Hospital resulted in the ouster of Dolenz.

In further simplification: Dr. Dolenz, as a businessman, was interested in handling his affairs in such manner as to minimize the amount of his taxes. In the accomplishment of such objective of "tax avoidance" (as contrasted with "tax evasion" which would be improper) he caused corporations to be formed of which he became sole owner, and as to which he was the *alter ego*. It was primarily for tax purposes he formed the two corporations, Hospital and Bee Jay.

Therein lies the "key" to Dolenz' rather loose handling of the affairs of both corporations. Different parcels of realty, the whole of which was generally used by Hospital for hospital purposes, apparently was owned by Bee Jay and Dolenz. Bee Jay owned some of them and Dolenz owned others. None was jointly owned. Dolenz, as an individual, knew the premises he would occupy on Hospital's premises. Hospital—as *alter ego* of Dolenz—knew what premises Dolenz would occupy. Bee Jay, also *alter ego* of Dolenz, was in accord and fully informed. It was for tax purposes that there was agreement of these relative to the occupancy of Dolenz; hence it initially was of small importance that the premises be properly described in the lease which, purportedly, was of premises Bee Jay had the right to lease and the right to receive rents from Dolenz as Bee Jay's tenant. If the premises proved to have been erroneously described (as it was) and, if that proved to be important to be corrected, it was thought by these parties that no problem would be presented for they might easily accomplish such. To them what was important (for tax purposes) was that there be something written as evidence for the tax collector that there was the $1,500.00 monthly rent—payable to Bee Jay—and not the free occupancy by Dr. Dolenz.

Whether the parties' agreement was formally or informally made there was meet-

ing of the minds—whatever the object sought to be thereby accomplished—of the two corporations with one another and with Dr. Dolenz. This meeting of the minds was upon the matter of the leased property, the lease period, and upon the Bee Jay entitlement to receive monthly rents at $1,500.00 as from Dolenz. Consideration for the agreement was not a problem for it could be found existent, and—as applied to the rights of Bee Jay—might be found existent in its capacity as a third party beneficiary of the contract of Dolenz and Hospital.

Hereinabove described is presented the situation when a California domiciled corporation, the Neuro-psychiatric Hospital and Health Services, Incorporated, became interested in the purchase of all the stock of Hospital plus purchase, for Hospital, as its wholly owned subsidiary, all the real estate of Bee Jay and of Dolenz.

■ In general chronological order, the factual circumstances were shown to have been:

1. As of January, 1970, Dr. Dolenz and Bee Jay owned all the properties proximate to the corner of West Magnolia and South Adams Streets in Fort Worth, all generally referred to as 1066 West Magnolia, and being premises which may be treated as leased by Hospital, except for a part thereof leased to Dr. Dolenz by Bee Jay pursuant to an agreement made one and one-half months prior. (This was the lease which failed as a "writing". Nevertheless our holding is that it, or the oral contract of which it was intended to be a memorandum, never failed as a lease upon the premises intended for the period and upon the terms therein prescribed.)

2. The agreement effective as of 1 January, 1970 between Bee Jay and Dolenz relative to the aforesaid premises, (occupied and in use by Dolenz from that date), was one by which he was obligated to pay Bee Jay rent at $1,500.00 per month for an initial lease period of 5 years, with option for Dolenz to renew and extend for an additional 5 years.

What this amounted to was an oral lease because of the failure of the written instrument to describe the premises constituting the actual subject of their contract. Neither Bee Jay nor Dolenz ever owned the property described in the "writing". (A question exists upon whether it was Bee Jay or Dr. Dolenz who owned the property intended to be leased. In the circumstances of this case we deem the question immaterial.) Consideration to Bee Jay as its return performance was for Hospital to permit Dolenz to remain on premises occupied by his contract with Bee Jay, with Bee Jay to have the rent from Dolenz at $1,500.00 per month and for Hospital to receive nothing in the form of rentals. At no time did Hospital ever claim any right to receive rent.

3. About 1 February, 1971, the California domiciled organization, Neuro-psychiatric Hospital and Health Services, Incorporated, became interested in the operations of Hospital. Through its officers and attorney (that is those who were the officers and attorney at the time) they became acquainted with the true situation existent as described above. The officers and attorney of such corporation were aware that Dr. Dolenz, as an individual, officed in a building on the hospital premises; that his tenancy was under agreement by Hospital that he have the right, by his agreement of lease with Bee Jay, and that by such agreement any entitlement to rent from Dolenz, at $1,500.00 per month, was a right of Bee Jay and not of Hospital; that term of the agreement of Dolenz tenancy was for the initial 5 year period from January 1, 1970, with Dolenz' right to renew for 5 years at same rent.

4. Neuro-psychiatric Hospital and Health Services, Incorporated, the California domiciled corporation, at all times having notice and knowledge as stated above, made a deal with Dolenz and Bee Jay. It was to acquire from Dolenz, as owner of all the stock of Hospital and as fee owner of some of the real estate

used in the hospital operations, the entire stock of Hospital (so that it would be a wholly owned subsidiary of the California domiciled corporation); and at the same time obtain from Dolenz and Bee Jay—for Hospital, as its wholly owned subsidiary,—title to all the realty used in its business. The consideration to Dolenz in exchange was agreed to be 80,000 shares of stock in the California domiciled corporation plus option to acquire more at a prescribed price. For Bee Jay the consideration in exchange for its realty was for Hospital to honor its contract with Dolenz and Hospital to the effect that Dolenz be tenant on the premises—now owned by Hospital in fee—under the provisions of contract existent between Bee Jay and Dolenz.

5. The transactions were consummated. Pursuant to consummation Bee Jay and Dolenz transferred all the real estate to Hospital as the newly constituted wholly owned subsidiary corporation. Dolenz received his stock in the parent corporation. The officers of Hospital remained the same. Dolenz' position as president was reconfirmed at meeting of the board of directors of Hospital. After this time the hospital business which had theretofore been conducted from the premises continued as before to all outward appearances and for all essential purposes; the difference being that Hospital (all of the stock in which was owned by the corporation domiciled in California) from time of the consummation of the transactions held the legal title to the premise.

6. 9 February, 1971, at a board meeting of Hospital (immediately prior to consummation) there was written into the minutes and subscribed (by Dolenz), relative to the consideration Bee Jay would receive for its property (acquired the day following): "[T]he only compensation the BEEJAY CORPORATION is receiving is continuation of a lease with Dr. Bernard Dolenz for $1500 a month . . . . . Dr. Dolenz will not pay additional rentals to the Fort Worth Neuropsychiatric Hospital since this was part of the agreement and consideration of the BEEJAY CORPORATION to release said properties without compensation."

7. Following the transaction(s) in early 1971 (whereby the California domiciled corporation became owner of all the stock in Hospital, with Hospital becoming the fee owner of the land from which its business was conducted) by deeds executed February 10, 1971, there was, with the concurrence of the parent California domiciled corporation, a board meeting of the officers of Hospital as the wholly owned subsidiary. Thereat there was re-election and re-confirmation of the corporate officers as theretofore constituted. Dr. Dolenz was reconfirmed as president. As part of the minutes reduced to writing and signed officially by Dolenz was the following: "Dr. Dolenz will continue to pay rent to the BEEJAY CORP. of $1500 monthly as per agreement of February 9." The reference was intended to mean either the Hospital meeting of February 9, 1971, or the corporate meeting of Bee Jay's board of directors on February 8th, 1971, (or which reflected that date). In the minutes of Bee Jay's meeting there was the following recitation: "The BEEJAY CORPORATION will continue the lease agreements with Dr. Bernard Dolenz for $1500 a month per the lease agreement dated November 1969, as additional compensations for the sale and release of the real estate comprising the hospital operation."

8. 10 February, 1971, was apparent consummation date for the entire transaction, or transactions, here involved. The question exists, was Hospital's ownership and occupancy lawfully burdened by and subject to an agreement of lease made by Bee Jay and Dolenz; and was that fact provable as "without" the statute of frauds?

9. Approximately one and one-half years later, and beginning about September in 1973, the "new" management of Hos-

pital decided to oust Dr. Dolenz from the portion of the hospital premises which he claimed right to occupy by the terms of his agreement of lease from Bee Jay. (The "new" management did not include those who had been the managers as of the prior transactions which we describe as consummated on February 10, 1971.) Dolenz resisted ouster. Hospital filed a suit in Forcible Entry and Detainer and this culminated in Dolenz being evicted. Bee Jay was intervenor in the Forcible Entry and Detainer action.

10. Following his eviction Dolenz discontinued further payments to Bee Jay as rent. Bee Jay's cause of action against Hospital was born in the Dolenz ouster. Damages claimed by Bee Jay was the amount of rent it would have received from Dolenz, or would have had the right to demand of Dolenz, except for the fact of the ouster. By its suit Bee Jay declared upon the theory of contract and sought to recover from Hospital because of its breach. In connection with the foregoing the officer(s) and attorney of the California domiciled corporation—as of the time it acquired the stock of Hospital—had by this time ceased to have such connection. New executive personnel had been selected to conduct the business of Hospital. These were the agents of Hospital who sought to oust Dolenz. On trial there was not the benefit of evidence from anyone other than Dolenz who had been an officer or attorney in February of 1971. There was nothing to controvert Bee Jay's proof that both the parent corporation and its subsidiary, Hospital, had notice of and had consented that Hospital permit and contract for continued occupancy of the premises by Dr. Dolenz, upon rental owed by him to Bee Jay, or to honor the pre-existent contractual agreements. There was nothing to contradict the Bee Jay evidence that the promised true exchange considera-

tion for its deed to Hospital was the latter's promise to continue to accord Dolenz rights as tenant, with any right to receive rents of him to be Bee Jay's and not Hospital's.

In answer to three special issues the jury found, in favor of Bee Jay, as follows: (1) There was an agreement between Bee Jay and Hospital, at time of the conveyance of the properties to Hospital on February 10, 1971, that Dr. Dolenz would have the right to remain as an occupant in accordance with the provisions of the instrument which was the lease so providing (but which, as we have shown, misdescribed the location of the premises); (2) that had he been permitted, Dr. Dolenz would have exercised his option to extend the primary period of the lease an additional five years; and (3) $36,-900.00 was the amount of monies received by Bee Jay from Dolenz as rentals subsequent to February 10, 1971.

(Warranting notice is that Dr. Dolenz was not made a party to this suit. By provision of the important contract of transfer by Dolenz of all his stock in Hospital he had agreed to the following: "The Transferor (Dolenz) agrees to indemnify and hold harmless Neuro-Psychiatric (transferee), its successors and assigns, from and against any and all liability, loss, cost and expense, including reasonable attorneys' fees, caused by any breach or other failure of the representations, warranties and covenants set forth in this Part III of this Agreement." It would be under this, if under any part of the agreement with the California domiciled corporation, that there would be a right to make a claim against Dr. Dolenz because a loss might be suffered by anyone as result of the judgment in this case in favor of Bee Jay. It is indicated in the briefs that such a case pends for trial. The questions which might arise thereunder are not matters for our consideration on the instant appeal.)

■ Before considering the points of error advanced by Hospital in other complaint we will state that our conclusion is that the verdict of the jury was one which

sufficed upon the issues of fact to support the judgment for Bee Jay. An agreement having been found, and by the evidence indisputably breached by Hospital to the financial detriment of Bee Jay—Bee Jay having the enforceable contractual right to receive what was contracted with the California domiciled corporation (Hospital having received deed of Bee Jay to all the Bee Jay real estate, and being the wholly owned subsidiary of the parent corporation, having full notice of the Bee Jay contractual right) —and, Hospital, upon election or re-election of the same board of directors as before, having ratified the Hospital-Dolenz-Bee Jay contract—Bee Jay was entitled to that which it would have received had there been no breach by Hospital.

It is to be observed that there was no way by which Bee Jay could have mitigated its damages if in fact there was the entitlement to receive them; and that if Bee Jay was not entitled to any consideration whatever, it necessarily must be considered to have made a free gift of its land and improvements to Hospital. This is so because for purposes proper to be considered Bee Jay and Dolenz must be viewed exactly as one would view two separate entities or individuals—with Dolenz in his individual capacity having no fiduciary relation to Bee Jay.

█ Our conclusion is that the transactions: (a) that between Bee Jay and Dr. Dolenz which created the initial rights of Dolenz to occupy the premises in question and the return right of Bee Jay to receive the rents therefor from him; and (b) the highly involved one between Bee Jay, Dolenz, and Hospital on the one hand and the California domiciled corporation on the other—which was coupled with benefits to said foreign corporation, and to Hospital in its new condition as the wholly owned subsidiary corporation (to receive title to real estate which included the premises under oral lease from Bee Jay to Dolenz)—both constituted transactions which, under usual circumstances, as between parties usually involved in litigation, would be transactions "within" the Statute of Frauds and unenforceable for that reason. Likewise, evidence in parol which purported to establish the parties' oral contractual rights would be inadmissible. Under the facts in this case, to enforce the defenses provided by the statute to prevent recovery by Bee Jay would be to accomplish an actual fraud upon it and, under sanction of law, to deny it any recovery for that actual harmful loss which it undoubtedly would have suffered. That to which we refer is the failure to receive that consideration promised in exchange for Bee Jay's real property, the receipt of which is affirmed by hospital (as well as the California domiciled corporation). Hospital should be estopped to deny its promise of the return consideration to which it had been committed and because of which it had received tangible benefits. We hold all transactions to be "without" the Statute of Frauds, enforceable despite the inhibitions which ordinarily would be proper to apply, with the parol evidence hearing thereupon admissible to prove the factual circumstances.

█ In stating the above we include the phase of transaction (b) in which there must be considered to have been the oral agreement for tenancy of Dr. Dolenz for more than one year. We also include the circumstances culminating in the execution of deeds on February 10, 1971, which have application in that thereby was the agreement honored as part of the return consideration of Hospital. Ordinarily unenforceable is oral agreement for contractual performance in part which clearly could not be performed within a period of one year, when intended as consideration for a deed or lesser interest in real estate. However, ordinarily the true and actual consideration for a deed, etc., may be proved by parol by one who has fully performed his own contractual obligations. Without justification to have certain proof received in contract cases it ordinarily should be excluded where as a part of it would be shown that the return performance—on oral agreement of the other party—could not be completed within one year. Here there is justification for the receipt of the proof on trial of the case.

There is alternate theory by which affirmance would be proper. Considered as a mere oral promise on the part of Hospital to make compensation by way of return performance in providing the intended space on the premises to which it received title by deeds on November 10, 1971, and considered as the complete performance by Bee Jay of its part of the contract when it executed its deed, judgment in the case might be affirmed on a theory that the proper rule of construction relative to application of the statute of frauds is: "A contract which by its terms is capable of being performed within one year from the date of its making by one party, and which has been fully performed by such party within the year, is not within the statute of frauds." To that effect was the holding in *City of Tyler v. St. Louis Southwestern Ry. Co. of Texas*, 99 Tex. 491, 91 S.W. 1 (1906). See also 37 C.J.S. "Statute of Frauds" § 251 p. 762, "Performance by One Party" (1943). In *City of Tyler, supra*, there was agreement by a railway company to maintain the location of its shops in the City of Tyler in the future in consideration of deed to it of land or interests therein from the city and third persons in its behalf, with all the conveyances and transactions incident thereto fully accomplished within one year. The court held the railway company bound by contract.

While perhaps not on the identical factual situation in *City of Tyler, supra*, there is disagreement of other Texas cases upon inferences of the statement. 6 A.L.R.2d 1053 (1949), "ANNOTATION Performance as taking contract not to be performed within a year out of the statute of frauds", and, in supplement of that previously written under the annotation, beginning at p. 1118, and supplemented on p. 1139, et seq.

■ Generally, it is in instances where the matter of irreversible injury has not actually resulted from the breach to the party who has fully performed that the statement in *City of Tyler, supra*, is cast in question. There the court did not consider the matter of impropriety of use of the statute where to do so would in itself constitute a fraud, though undoubtedly it would have been appropriate for the court to have done so under the facts. In the instant case we believe the stronger reasons for holding by the transactions with which we deal here should be considered to be "without" the statute to be because if it were otherwise the statute would be used to perpetrate fraud on Bee Jay. However, irreversible injury to Bee Jay has actually resulted from the breach by Hospital, and the decision in *City of Tyler, supra*, fortifies our holding that the statute of frauds should not apply in this case.

By holding the transactions "without" the Statute of Frauds it follows that the parol testimony objected to by Hospital was properly admitted to prove the case of Bee Jay. All of such evidence was of probative force and effect sufficient to support the judgment. As applied to the jury findings our holding is that none of them was so contrary to the greater weight and preponderance of the evidence as to be clearly erroneous.

By what is written to this point Hospital's chief points are overruled.

■ Though Hospital presents a point of error that Special Issue No. 3 should not have been submitted, there was another point which complained of the judgment amount because Dr. Dolenz was found by the answer thereto to have paid Bee Jay less than $1,500.00 per month rent during the term of occupancy inquired about. Hospital seeks benefit because Bee Jay did not insist that Dolenz pay the amount contracted. The error is overruled as without consequence. Bee Jay could have forgiven Dolenz all failures to pay the amount of rentals agreed during his occupancy. As between Hospital and Bee Jay it would be the amount of the latter's entitlement from Dr. Dolenz from time of his ouster, had he not been ousted, that its damages would properly be measured. By evidence not in dispute, if there was enforcible obligation of Hospital to honor a lease from Bee Jay to Dolenz on the premises in question, it would be upon the right of Bee Jay to have

Hospital honor it as one under which Bee Jay's entitlement would be $1,500.00 per month. Answer returned to the special issue was essential to the judgment. Thereby the court was enabled to compute the amount for which a correct judgment should be rendered. A correct judgment amount was thereby computed. The issue actually amounted to a defensive special issue.

■ Heretofore mentioned was that there had been litigation between Hospital and Dr. Dolenz in a case of Forcible Entry and Detainer action. The final result, despite the entry of Bee Jay as intervenor in the action, was Hospital's successful ouster of Dolenz. Hospital contends that by reason of the foregoing Bee Jay's cause of action was barred (as by a prior action) from seeking the recovery awarded by judgment in this case. By Tex.R.Civ.P. 746, "Only Issue", is provided that the only issue to be tried in such a proceeding is the right of plaintiff to possession of the premises from which the defendant is sought to be evicted. Tex.Rev.Civ.Stat.Ann. art. 3994 (1966), "No bar" provides that such proceedings would not amount to a bar of certain other actions. Of these the provisions are sufficient to encompass the suit of Bee Jay. Bee Jay could not have been hampered in prosecution of the instant suit because of his intervention in the Forcible Entry and Detainer action.

■ Because of Hospital's complaints leveled against Special Issue No. 1 we copy the same in full:

"SPECIAL ISSUE NO. 1.

"Do you find from a preponderance of the evidence that on February 10, 1971, at the time of the conveyance of the properties in question to Fort Worth Neuropsychiatric Hospital Inc. that there was an agreement between Bee Jay Corporation and Fort Worth Neuropsychiatric Hospital Inc. that Bernard J. Dolenz would have the right to remain as an occupant in accordance with the provisions of the instrument designated as Plaintiff's Exhibit No. 1 and Bee Jay Corporation being entitled to receive the rentals provided in said instrument?

"You are instructed that an agreement may be express or implied. An express agreement is one in which the mutual assent of the parties and the terms of the agreement are expressly stated, either orally or in writing. An agreement is implied when its terms are not expressly stated by the parties, but an agreement may be reasonably inferred from, and approved by, the facts and circumstances attending the transaction.

". . .

"ANSWER: There was such an agreement."

On the foregoing the following complaints were made of Special Issue No. 1 before the trial court and upon the appeal:

(a) it did not present an ultimate issue of fact as raised by the pleadings and evidence;

(b) the language used constituted a comment on the weight of the evidence;

(c) the instruction made a part thereof was an incorrect statement of law.

Under (a) and (b) Hospital adopts the theory that the agreement about which there was inquiry was necessarily one upon which there was an original meeting of the minds of the parties on the specific date, February 10, 1971 (date of the deeds by both Bee Jay and Dr. Dolenz to Hospital), and not an agreement which might have been earlier made as to which the meeting of the minds of the parties persisted on February 10th. By the issue there was no mention or reference to any antecedent time and/or circumstances of the contract to which evidence admitted on trial had relation. However, such evidence as there was did actually relate thereto.

Whether or not it was effective to transfer title to the described realty to Hospital, there was by Hospital the receipt of Bee Jay's deed as consideration due to Hospital—by contract—and upon consideration from Hospital promised to Bee Jay in return. Under these circumstances the jury could not have been deceived. Their finding should be given controlling effect. The inquiry must be construed to have meant

that persisting as of the time of the Bee Jay performance by execution of the deed the consideration agreed in exchange to Bee Jay, as due by Hospital, was the promise of Hospital that Dolenz should have the rights of a tenant on its property for the remainder of a ten year period—if option of extension was exercised—with Bee Jay entitled to receive accrued rents by reason thereof at $1,500.00 per month. The points of error by which there is complaint are overruled.

Heretofore written upon was that, as of the time for conveyances to Hospital by Bee Jay and by Dolenz, Hospital actually was (or was to be considered as of that time) the wholly owned subsidiary corporation of the parent California domiciled corporation. Hospital was "on notice" of every material fact. Through its officers it knew and agreed upon the rights and benefits both Bee Jay and Dolenz either should receive or, perhaps, had already received as the return consideration from Hospital to Bee Jay, and from Hospital and such parent corporation to Dolenz.

Under (c) there is assertion to the effect that the burden of proof placed upon Bee Jay was less onerous than it should have been. It was contended that the incorrect statement of law upon express and implied contracts,—was primarily because of failure to instruct the jury that necessary to the existence of contract is the mutual assent of the parties,—and also because the jury was told that an implied contract could result without the mutual assent of the parties.

█ The complaint of incorrect statement of law is overruled. The term "agreement" could not have conveyed anything different from a mutual assent of the parties. The term "agreement" means a meeting of the minds of the parties upon the subject matter. *Duncan Coffee Co. v. Chiles,* 136 S.W.2d 929 (Tex.Civ.App.—Galveston 1940, no writ). The subject matter, of course, would be that which was consideration, or what each party should give or receive in exchange. The jury was not told that an implied contract could result without mutual assent of the parties. It was told that it might be inferred that by mutu-

al assent of the parties there resulted an agreement of contract.

It is believed that all points of error presented have been discussed. In any event, each point of error presented has been severally considered in the preparation of the opinion; all of them are overruled.

Judgment is affirmed.

## OPINION ON MOTION FOR REHEARING

Hospital has pointed out an error of fact in our opinion which it deems material and to have resulted in an erroneous legal conclusion.

We did err in stating that Bee Jay did not receive anything of value for the transfer of land and improvements to Hospital other than its right to receive the rents discussed in the opinion. As pointed out by Hospital Bee Jay received (in addition) a portfolio of stock belonging to Hospital valued at $75,000.00.

Pointing out that the case is one in which Bee Jay did receive benefit of the bargain made, though not the full consideration it expected, Hospital relies upon certain language of the Supreme Court to support its claim that the Statute of Frauds should be held to apply. *Cowden v. Bell,* 157 Tex. 44, 300 S.W.2d 286 (Tex.1957).

*Cowden,* according to Hospital, stands for the proposition that the Statute of Frauds cannot be circumvented if the "harm" consists of simply not receiving full consideration or the failure to get full benefit of a bargain. Upon this construction of *Cowden* Hospital proceeds, as we understand it, upon the theory that since Dolenz was the *alter ego* of Bee Jay and received further substantial consideration for the transfer of all real estate, Bee Jay had not sustained "actual loss" so as to make the transaction—considered as the transfer of the Bee Jay property—one in which the application of the Statute of Frauds to prevent recovery would result in a fraud.

█ We have considered the authority of *Cowden,* along with the opinion of the Court of Civil Appeals in the same case, and along with the opinions in other cases to

which there was reference. We find the contention of Hospital unsound. It is obvious from the authorities that where a party in a position analagous to that of Bee Jay cannot show that "actual loss" has been or will be sustained, meaning "substantial out-of-pocket loss", the opposite party should be allowed to defeat his claim by invoking the Statute of Frauds. Here, however, Bee Jay has shown "actual loss".

The doctrine of *"de minimus non curat lex"* stands for the proposition that law does not care for or take notice of very small or trifling matters. *Anguiano v. Jim Walter Homes, Inc.*, 561 S.W.2d 249, 255 (Tex.Civ.App.—San Antonio 1978, writ ref'd n. r. e.). It was to this doctrine the Supreme Court had reference in *Cowden.* We certainly are ready to treat some amount of "loss" which is a mere trifle—for example a matter of a few dollars, or property right which measured in money could only amount to such—as insufficient result of fraud to authorize a court to refuse to honor the Statute of Frauds. However, in this case the "actual loss" of Bee Jay is considerably more than a trifle. Involved were many months of rentals at $1,500.00 per month. This qualifies as an "additional and substantial out-of-pocket loss", sufficient cause to refuse to permit the Statute of Frauds to be invoked.

As noted in the opinion, under the circumstances of this case there is no occasion to treat the fact that Bee Jay was the *alter ego* of Dolenz as a factor. What Dolenz received as consideration must be disregarded in viewing what Bee Jay received. Dolenz was not a party to this suit. There is a case pending in a trial court with Dolenz a party defendant, presumably a defendant against whom there will be matters litigated which are either created or enhanced as the result of the judgment which Bee Jay has obtained.

The motion for rehearing is overruled.