FORT WORTH NEUROPSYCHIATRIC
HOSPITAL, INC., Petitioner,

v.

BEE JAY CORPORATION, Respondent.

No. B–8979.

Supreme Court of Texas.

May 21, 1980.

Rehearing Denied July 9, 1980.

Meyers, Miller, Middleton & Weiner, John R. Henderson, Dallas, for petitioner.

Staples & Foster, Ross T. Foster, Hurst, for respondent.

GREENHILL, Chief Justice.

Bee Jay Corporation brought suit against Fort Worth Neuropsychiatric Hospital, Inc., seeking to recover damages for breach of an oral contract occasioned by Fort Worth Neuropsychiatric's eviction of Dr. Bernard J. Dolenz from his hospital offices. The trial court rendered judgment that Bee Jay recover $122,700.00 from Fort Worth Neuropsychiatric, and the court of civil appeals affirmed. 587 S.W.2d 746. For the reasons hereinafter stated, we reverse the judgments of the lower courts, and render judgment that Bee Jay Corporation take nothing by its suit against Fort Worth Neuropsychiatric Hospital.

The relevant facts are as follows. In 1965, Dr. Dolenz incorporated both Bee Jay and Fort worth Neuropsychiatric. Dr. Dolenz's purpose in incorporating these two entities was to acquire land for the construction of a private psychiatric hospital, with an additional acquisition of the necessary clinic facilities. Until 1971, Dr. Dolenz owned substantially all of the stock in both corporations. He also served as president of both corporations; his wife served as secretary of both corporations.

After incorporating the two entities, Dr. Dolenz, acting in his capacity as an individual, acquired the property on which the private hospital was subsequently constructed. Dr. Dolenz, acting in his capacity as President of Bee Jay Corporation, acquired two other buildings in the immediate vicinity for use as clinic space in conjunction with the hospital. One of the clinic buildings was located adjacent to the land on which the hospital was later built. The other clinic was located across the street from the hospital. Due to the close proximity of the buildings, the hospital and the two clinics used the same general mailing address: 1066 West Magnolia Avenue.

After the acquisition of land was completed, Dr. and Mrs. Dolenz, signing in their capacity as individuals, borrowed the money necessary for the construction of the hospital. The hospital was constructed, and Dr. Dolenz began using office space in the hospital.

In 1969, acting on his accountant's advice, Dr. Dolenz entered into a written lease agreement with Bee Jay Corporation, whereby Dr. Dolenz agreed to pay $18,000.00 a year to lease office space from Bee Jay Corporation. The lease provided for a five-year term, with an option afforded to Dr. Dolenz to extend the lease for an additional five-year period. In attempting to describe the leased premises, the lease recited a lot and block number which, unfortunately, failed to describe any of Bee Jay's property. Instead, the lot and block number mistakenly referred to a mortuary, located two blocks away from the hospital. Immediately following this misdescription, the lease further described the leased premises as being "also known as 1066 West Magnolia Ave." As mentioned previously, there were three different buildings that used this general mailing address, and were known as being at that address.[1]

In the latter part of 1970, Dr. Dolenz was approached concerning a possible merger of the psychiatric hospital with a Delaware corporation, Comprehensive Care Corporation. In order to accomplish this transaction, Dr. Dolenz and Bee Jay Corporation

---

1. We do not consider the question of the sufficiency of the legal description of the property as set forth in the lease. The description, "known as 1066 West Magnolia Ave.," is considered relevant on the question of the parties' intent in entering into or continuing any lease, written or oral.

conveyed their respective interests in the 1066 West Magnolia complex, the hospital and clinics, to Fort Worth Neuropsychiatric Hospital. In return, Fort Worth Neuropsychiatric conveyed a stock portfolio to Bee Jay. Additionally, Fort Worth Neuropsychiatric orally agreed with Bee Jay to continue its 1969 lease with Dr. Dolenz, whereby Dr. Dolenz was to lease office space from Bee Jay. Fort Worth Neuropsychiatric also orally agreed to allow Bee Jay to continue receiving the $18,000.00 annual rent paid by Dr. Dolenz.[2]

Subsequently, Dr. Dolenz transferred all of his shares of stock in Fort Worth Neuropsychiatric to Comprehensive Care, in exchange for 80,000 shares in Comprehensive Care, and an option to purchase an additional 20,000 shares.

After the merger, Dr. Dolenz became embroiled in a proxy fight for control of the management in Comprehensive Care. After failing in his bid to gain control, Dr. Dolenz was notified to vacate the office space that he had maintained in the hospital. He refused to leave, and was eventually removed in a forcible entry and detainer suit.

After being ousted from his office space in the hospital,[3] Dr. Dolenz quit paying rent to Bee Jay under the 1969 lease, maintaining that he was no longer afforded the office space to which he was entitled under that lease. Bee Jay, in turn, sued Fort Worth Neuropsychiatric (now merged with Comprehensive Care) for the damages caused by the alleged breach of the oral agreement to continue the terms of the 1969 lease between Bee Jay and Dr. Dolenz. The trial court entered judgment for Bee Jay, and the court of civil appeals affirmed. We reverse.

Fort Worth Neuropsychiatric makes three arguments in seeking to reverse the lower courts' judgments: (1) since there was no evidence that Bee Jay's lease with Dr. Dolenz covered the hospital office space, his ouster caused no breach of the oral agreement between Bee Jay and Fort Worth Neuropsychiatric to continue that lease; (2) the oral agreement between Bee Jay Corporation and Fort Worth Neuropsychiatric could not be performed within one year of its making, and thus is unenforceable as being contrary to the Statute of Frauds; and (3) any evidence of such an oral agreement was inadmissible under the Parol Evidence Rule, since the transfer between Bee Jay and Fort Worth Neuropsychiatric was evidenced by a final writing, into which all understandings were merged, as a matter of law. In light of our agreement with Fort Worth Neuropsychiatric's first point of error, we find it unnecessary to pass upon the other issues raised. Our silence on these issues should not be interpreted as an implicit approval of the lower court's discussion of these matters.

■ The evidence introduced at trial established the following. Prior to 1971, Dr. Dolenz owned, in his individual capacity, the land on which the hospital was subsequently built. Dr. Dolenz and his wife, in their individual capacities, took out the construction loan for the hospital. Bee Jay had neither an ownership interest in the hospital, nor any express authority to handle the leasing of hospital offices for the owner, Dr. Dolenz.[4] Bee Jay, on the other

---

**2.** At the time Bee Jay and Fort Worth Neuropsychiatric were making these oral agreements, both were wholly owned by Dr. Dolenz. Dr. Dolenz was the only participant in the negotiations between the two corporations.

**3.** This suit involves only the issue of Dr. Dolenz's right to maintain office space in the hospital under the 1969 lease. Comprehensive Care has not challenged his right to maintain office space in the adjacent clinics.

**4.** Bee Jay contends that there was some evidence of its ownership interest in the hospital or, in the alternative, evidence that it could lease office space in the hospital, with consent of the owner, Dr. Dolenz. Although our construction of the latently ambiguous lease makes the issue of Bee Jay's ownership, or authority to lease the hospital offices, immaterial, we hold that there was no competent *evidence* adduced at trial that would support either of Bee Jay's claims.

First, Bee Jay primarily relies on Dr. Dolenz's conclusory statements that Bee Jay owned an interest in the hospital. It is well established that in cases where ownership is an issue in

hand, did own the two clinic buildings that were in close proximity to the hospital, and which used the general mailing address of 1066 West Magnolia Avenue.

Against this background concerning the diverse ownership of the three buildings, Bee Jay introduced its 1969 lease with Dr. Dolenz. As noted, the lease mistakenly described the lot and block numbers of the demised premises. The lease, however, also described the property as being "known as 1066 West Magnolia Ave."

■ In determining the scope of the lease between Bee Jay and Dr. Dolenz, it is necessary to decide what the parties intended to lease when they agreed to rent office space at 1066 West Magnolia Avenue. Usually, in interpreting a lease, parol evidence is not admissible to determine the premises that were rented. *See, e. g., Smith v. Liddell*, 367 S.W.2d 662 (Tex.1963).

Where, however, the lease contains a description of the demised premises that is so general that it seemingly describes more than one location, the lease contains a latent ambiguity. In such a case, the language of the lease, though clear on its face, cannot be enforced without raising doubts concerning the location of the demised premises. Such is the situation in the instant case. At the time the lease was executed, there were three buildings that were known as 1066 West Magnolia Avenue; the two clinics, then owned by Bee Jay Corporation, and the hospital, then owned by Dr. Dolenz in his individual capacity.

■ Where such a latent ambiguity arises in the course of interpreting and enforcing a lease, parol evidence is necessarily admissible to resolve the doubts and identify the premises that were leased. *Harrison v. Manvel Oil Co.*, 142 Tex. 669, 180 S.W.2d 909 (1944).

■ In this case, only Dr. Dolenz testified concerning the parties' intention when describing the leased premises as being "known as 1066 West Magnolia Ave." Dr. Dolenz was uniquely situated to answer the inquiry concerning the parties' intentions, since he executed the lease on his own behalf in an individual capacity, and executed the lease on Bee Jay's behalf, as the corporation's president. When asked about the intent behind the lease, he testified: "The intent was to maintain office space in the adjacent buildings that Bee Jay had in the clinic operations." Dr. Dolenz never retracted or qualified this statement of intention. Nor was there any conflicting testimony presented on the parties' intention when entering into the lease.[5] In sum, there was no other evidence that the writ-

dispute, the courts need not consider as competent evidence the legal conclusions of witnesses concerning ownership interests. Such ultimate questions are matters of law that are decided by the courts on the basis of *facts* presented in evidence. *See e. g., Magee v. Paul*, 110 Tex. 470, 221 S.W. 254, 258 (1920); *Phillips v. Wertz*, 546 S.W.2d 902, 907 (Tex.Civ.App.—Dallas 1977, writ ref'd n. r. e.); *Rutledge v. Mitchell*, 91 S.W.2d 1135 (Tex.Civ.App.—Austin 1936, writ dism'd).

The only facts presented in this case in support of Bee Jay's contention that it had an ownership interest in the land were that (1) Bee Jay had paid some advertising expenses in an effort to procure the loan for the hospital's construction and (2) Bee Jay had paid the mortgage payments owed by Dr. Dolenz. Bee Jay, however, presented no testimony, or other evidence, that any of these payments was made in exchange for an ownership interest in the hospital. There was no evidence that Bee Jay gained any ownership interest in the hospital by so acting. *See, e. g., Burkhardt v. Lieberman*, 138 Tex. 409, 159 S.W.2d 847, 853 (1942);

*Eckert v. Stewart*, 207 S.W. 317, 323 (Tex.Civ. App.—Amarillo 1918, writ ref'd).

Finally, Bee Jay argues that it could have leased the hospital offices owned by Dr. Dolenz, pursuant to an agreement with Dr. Dolenz to act as his leasing agent. The record, however, reflects no testimony, or other evidence, that such an arrangement existed.

**5.** At one point in his testimony, Dr. Dolenz testified concerning the mistaken lot and block numbers contained in the lease. He testified that the numbers that identified the mortuary as the demised premises were erroneous; the parties intended the lease to cover lots one block over from the mortuary. The lots so identified by Dr. Dolenz in his testimony were, in part, clinics owned by Bee Jay, and in part land not owned by Bee Jay or Dr. Dolenz. His testimony concerning the lots that should have been covered by the lease did not, however, encompass any lots where the hospital was located.

ten lease, which contained a latent ambiguity, was meant to include any office space outside of the clinic buildings owned by Bee Jay.

In light of Dr. Dolenz's unequivocal testimony concerning the parties' intent to lease the office spaces in the adjacent clinic buildings owned by Bee Jay, and the absence of any evidence to the contrary, we hold that the evidence conclusively established that the 1969 lease covered only the office space in the clinics adjacent to the hospital. Accordingly, Fort Worth Neuropsychiatric's ouster of Dr. Dolenz from his office space in the hospital did not infringe upon Bee Jay's rights under its 1969 lease with Dr. Dolenz. Thus, the evidence conclusively establishes that Fort Worth Neuropsychiatric did not breach its oral agreement with Bee Jay by evicting Dr. Dolenz from his hospital offices.

Accordingly, we reverse the judgments of the lower courts, and render judgment that Bee Jay Corporation take nothing by its suit against Fort Worth Neuropsychiatric Hospital, Inc.