721 P.2d 218

**Lacey SIVAK, Petitioner-Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 16120.**

Court of Appeals of Idaho.

June 19, 1986.

Lacey Sivak, pro se.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for respondent.

PER CURIAM.

Lacey Sivak, an inmate at the Idaho State Correctional Institution, appeals from an order of the district court which affirmed a magistrate's order quashing Sivak's petition for the return of personal property confiscated by the Idaho Department of Corrections. We affirm for the reasons stated below.

The record reveals the following facts. Sivak was sentenced to death after he was found guilty by a jury of first degree murder. In early January 1984, two weeks prior to his scheduled execution date, Sivak was moved from his death row cell to a "death watch" cell to await his execution. When he was moved to the death watch cell, his personal property was inventoried and stored by the Department of Corrections. The warden advised Sivak that his property would be returned when the department was notified of the Idaho Supreme Court's automatic stay of execution. Following issuance of the stay, Sivak was returned to his former cell but not all of his personal property was restored to him. The department retained some of Sivak's property in conformance with a new departmental rule which prohibited inmates of particular classifications (*e.g.*, death row) from possessing certain property. *See* Department of Corrections, Policy and Procedure Manual § 320; MODEL SENTENCING AND CORRECTIONS ACT § 4–127 (1979). In a cover memorandum which accompanied the new rule, the warden indicated that formerly authorized property could remain in the inmate's possession until (1) any change in the inmate's custody classification, or (2) a "lock-down as a result of disturbances."

On February 24, 1984, Sivak, *pro se,* filed an application for writ of "habeas corpus," seeking return of his property. A hearing was held before a magistrate. The department asserted Sivak's move from death row to "death watch" represented a change in Sivak's custody classification and, consequently, permitted the department to retain the property in conformance with the new property rule. The magistrate disagreed

and found Sivak's custody classification had not changed. The magistrate ordered that Sivak "be restored to the property he was in possession of prior to his being placed in death watch."

Approximately two months later, Sivak again petitioned the magistrate, this time for an order compelling the department to comply with the directive to return his property. The magistrate ordered the department to report its compliance with his prior decision. In its compliance report, the department asserted it had "fulfilled its obligations under the Order" except for such property as Sivak was no longer authorized to possess.[1] The department argued that since being removed from death watch status, Sivak has lost his "grandfather right" to possess unauthorized property. The department maintained that Sivak subsequently violated various departmental rules on at least four occasions after the magistrate issued his order to return Sivak's property. Sivak was "restricted to his cell" for a number of days as a consequence of violating the departmental rules. The department asserts that any of these "cell restrictions" would justify the imposition of the new property rule. The magistrate determined that the department was "in substantial compliance with the Court's Order" and quashed Sivak's writ of habeas corpus. Sivak then appealed to the district court. After reviewing the record, the district court held "that the evidence in the case supports the decision of the Magistrate."

On appeal to this Court, Sivak continues to seek the return of his property.[2] If the property is not to be returned, Sivak requests that it be released to his family. The state contends that this Court has no jurisdiction over this action because Sivak's petition for "habeas corpus" is a remedy for unlawful confinement—not for the return of detained property.

■ We begin by examining the state's threshold argument concerning jurisdiction. Although we agree with the state's assertion that a writ of habeas corpus is not the remedy for the return of property, we hold this Court and the lower courts possess jurisdiction to determine the property rights of inmates. *See Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Both the magistrate and the district court ruled on the merits of Sivak's claim despite the habeas corpus title. We are not persuaded that the erroneously titled action requires us to refrain from examining the merits of this appeal.

■ We note that inmates "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." There can be no unwarranted deprivation of life, liberty or property without due process of law, but the retained rights are "subject to restrictions and limitations." *Bell v. Wolfish,* 441 U.S. at 545, 99 S.Ct. at 1877; *Balla v. Idaho State Board of Corrections,* 595 F.Supp. 1558 (D.Idaho 1984). "The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights." *Bell,* 441 U.S. at 546, 99 S.Ct. at 1877. "Of necessity, rules far different from those imposed on society at large must prevail within prison walls." *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 137, 97 S.Ct. 2532, 2543, 53 L.Ed.2d 629 (1977) (Burger, C.J., concurring). Prison policies and practices "should be accorded wide-ranging def-

---

**1.** After returning some of Sivak's property, the compliance report indicated that the department was holding property which was (1) no longer authorized or (2) in excess of the authorized amount. Property in excess of the authorized amount included: 12 coffee containers, 7 container lids, religious books, 2 pens, an extension cord, and a comb. Property no longer authorized included: 3 gym trunks, a deck of playing cards, 4 photograph albums, a rubber ball, and a pair of sweat pants.

**2.** Specifically, he seeks the return of the playing cards, 6 coffee containers, 11 container lids, a hobby craft kit, a twelve-foot headphone cord, an emersion water heater, a wash cloth, 2 soap dishes, fingernail clippers, 2 combs, 7 safety pins, a phone jack, and 25 pens. No explanation has been given for the discrepancies between Sivak's list and the department's list.

erence" where needed to preserve internal order and the safety of inmates and corrections personnel. *Bell,* 441 U.S. at 547, 99 S.Ct. at 1878.

Despite the policy of judicial deference to correctional authorities, this restraint will not prevent a court from discharging its duty to protect constitutional rights when offended by institutional practices. *Jones,* 433 U.S. at 137, 97 S.Ct. at 2543; *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (deprivation of hobby kit valued at $23.50). Sivak argues the department's property rule is inapplicable to him because neither of the triggering instances—a change in classification or a disturbance resulting in lock-down—had occurred. Sivak acknowledges that all the death row cells were locked-down following an inmate stabbing, but contends the new rule should not be applied to him because he did not cause the disturbance. He points out that the warden's cover memorandum states that inmate property no longer authorized will "be removed on a case by case basis." Thus, he insists the removal of unauthorized property must be specifically directed at a particular inmate.

We believe Sivak's interpretation is too narrow. Although the state has not argued that "cell restriction" is equivalent to "lock-down," Sivak freely admits in his responses to the department's compliance report that his cell unit was locked-down. As previously mentioned, a "lock-down as a result of disturbances" would trigger the enforcement of the new property rule. By Sivak's own admissions, a lock-down had occurred. Since the magistrate found that Sivak was not reclassified, we can only infer that the magistrate concluded that the lock-down triggered the department's retention of the formerly authorized property. Hence, Sivak is not entitled to possess the unauthorized property.

■ Moreover, Sivak has not challenged the department's authority to promulgate such a rule or the propriety of the property rule itself. Neither has he demonstrated that the rule unfairly infringes on his retained rights. Indeed, the contested items in this case may call for the doctrine of *de minimus non curat lex*—the law does not care for or take notice of very small or trifling matters. *Fort Worth Neuropsychiatric Hospital, Inc. v. Bee Jay Corp.,* 587 S.W.2d 746 (Tex.Civ.App.1979), *rev'd on other grounds,* 600 S.W.2d 763 (Tex. 1980). *See also Pitts v. Griffin,* 518 F.2d 72 (8th Cir.1975) (confiscation of inmate's multi-frequency radio because prison regulation limited inmates to AM radios only, dismissed as frivolous); *Northern v. Nelson,* 448 F.2d 1266 (9th Cir.1971) (damages sought against prison for denial of religious freedom dismissed as *de minimus).* We agree with the district court that the denial of this property "does not rise to constitutional dimensions."

Accordingly, we affirm the district court's order which prohibited Sivak from repossessing the unauthorized property. The authorized property in excess of the property limits may be stored by the department for Sivak's eventual use. That property which is no longer authorized under the department's property rule should be released to Sivak's family as he has requested. Due to the discrepancy between the items listed at footnotes 1 and 2, we are unable to order any other, more specific disposition. No costs or attorney fees on appeal.