**PORTA-KAMP MANUFACTURING COMPANY, INC., Appellant,**

v.

**ATLANTA MARITIME CORPORATION, Appellee.**

No. A14-87-718-CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 28, 1988.

Rehearings Denied June 16 and July 21, 1988.

Reagan M. Brown, Houston, for appellant.

Kimberley A. Jacobson, Gavin H. McInnis, Houston, for appellee.

Before BROWN, C.J., and MURPHY and ROBERTSON, JJ.

## OPINION

ROBERTSON, Justice.

This appeal is from a judgment rendered in favor of appellee, plaintiff in the trial court, in a breach of contract action. Issues concern whether the bankruptcy proceedings of another entity operated as an automatic stay of the instant litigation, whether the evidence is sufficient to support certain issues, whether the failure of the jury to find on a defensive issue is against the great weight of the evidence and whether the court erred in submitting certain issues and denying another. We affirm.

The facts of this case concern a dispute between the parties that arose in 1979 and 1980. Porta–Kamp Manufacturing Company, Inc. (Porta–Kamp) manufactured prefabricated buildings. It had a contract with a Brazilian company to supply housing units which were to be used by that company during the construction of a railroad project in Iraq. Maritime Transport Overseas, Inc. (MTO) was a shipping company that arranged for the shipment of cargo by maritime vessels.[1]

Porta–Kamp contracted with MTO to transport the housing units from Houston to Iraq and the transfer was to be accomplished through multiple shipments. While MTO was in the process of loading the third shipment, Porta–Kamp terminated the contract and MTO was forced to sail with approximately a half-load. Porta–Kamp filed a lawsuit against MTO and MTO counterclaimed for deadfreight damages.

In January 1980 negotiations to settle the pending lawsuit between Porta–Kamp and MTO began and were concluded with the execution of a formal settlement agreement on July 8, 1980. Material to the issue before us, the agreement called for both parties to dismiss their respective claim and counterclaim and the payment by Porta–Kamp of the sum of $430,000, interest free, within a period of five years. Pursuant to the agreement, the lawsuits were

dismissed but Porta–Kamp never made any payments on the $430,000 obligation and this suit resulted. Porta–Kamp answered and filed a counterclaim claiming fraud and deception on the part of MTO and praying for actual and exemplary damages.

In answer to the first special issue, the jury found that Ricardo Paz, the representative of Porta–Kamp negotiating the settlement agreement, had apparent authority to negotiate and sign the agreement; on the second issue the jury failed to find that Porta–Kamp was fraudulently induced to enter into the agreement. In answer to special issues three and four, the jury found the amounts of damages and set attorney fees.

In its first point of error appellant contends the court erred in rendering judgment for appellee "because 11 U.S.C. § 362 operates as an automatic stay of this litigation." A very brief factual background is necessary. Appellee, a Texas corporation, acted as shipping agent for Atlanta Shipping Corporation (Atlanta Shipping) a Liberian corporation. There was no corporate relationship between appellee and Atlanta Shipping. After the instant lawsuit was filed, creditors of Atlanta Shipping filed an involuntary petition in bankruptcy against Atlanta Shipping and subsequently Atlanta Shipping filed a voluntary petition for reorganization under Chapter 11 in the Bankruptcy Court for the Southern District of New York. The bankruptcy court authorized the retention of the Haight, Gardner, Poor and Havens law firm to represent the interests of the debtor, Atlanta Shipping, in this lawsuit against Porta–Kamp. In 1985, appellee filed a motion to substitute parties and requested that Atlanta Shipping "the real party in interest and the owner of the claims against ... Porta–Kamp" be named plaintiff in this case. So far as the record reveals, this motion was never acted on. Further, Atlanta Shipping was not a party to the settlement agreement nor was it ever joined in any manner as a party to the original lawsuit (which was dismissed in

---

1. In 1981, MTO changed its name to Atlanta Maritime Corporation (Atlanta). When the names MTO and Atlanta are used, they refer to the same entity—the appellee.

accordance with the settlement agreement) or this lawsuit.

Appellant argues that the *automatic* stay provisions of Subsection (a)(1) of 11 U.S.C. § 362 apply not only against the debtor (Atlanta Shipping) but also against the real party in interest (appellee), and cites for support of this proposition *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir.1986). We believe its interpretation of *Robins* is erroneous. In *Robins* the question before the court did not relate to an *automatic* stay under Subsection (a)(1) of 11 U.S.C. 362 but related instead *"to the court's jurisdiction to grant a stay or injunction* of suits in other courts *against co-defendants of the debtor* or of third parties."* 788 F.2d at 998. It is universally acknowledged that the automatic stay provisions of 11 U.S.C. § 362 operate to stay proceedings *only against* the debtor. *Lynch v. Johns–Manville Sales Corporation*, 710 F.2d 1194 (6th Cir.1983); *Wedgeworth v. Fibreboard Corporation*, 706 F.2d 541 (5th Cir.1983). On the other hand discretionary stays may be granted by the bankruptcy court pursuant to 11 U.S.C. § 105 [*Matter of Johns–Manville Corp.*, 26 B.R. 405 (Bkrtcy.1983)] and by the district court pursuant to the general discretionary power to stay proceedings in the interest of justice and in control of their dockets [*Wedgeworth*, 706 F.2d at 544–545]. Had appellant believed it necessary, a request for a discretionary stay should have been made to the bankruptcy court. The automatic stay was not applicable to this lawsuit, and the trial court did not err in proceeding to judgment. Appellant's first point of error is overruled.

■ In its second point of error appellant contends the court erred in rendering judgment for appellee because the pleadings do not support special issue one inquiring of whether Ricardo Paz had *apparent authority* to negotiate and sign the settlement agreement on behalf of appellant. Plaintiff's petition alleged the "Defendant executed a Formal Settlement Agreement attached hereto as Exhibit A and incorporated herein by this reference." The attached settlement agreement was signed by Paz as "Vice–President—Marketing" and the acknowledgment signed by the notary public recited that Paz had signed the instrument as an act of Porta–Kamp Manufacturing Corporation in his stated capacity. While appellant filed a special exception to the petition concerning attorney's fees, it did not address an exception to the sufficiency of the pleadings on the basis now asserted. Appellant affirmatively plead lack of authority of Paz to bind the company. On identical procedural facts, we held in *Southline Equipment Co. v. National Marine Service, Inc.*, 598 S.W.2d 340 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ) that appellant's failure to specially except to appellee's petition acted as a waiver of any defect for purposes of appellate review. We adhere to that ruling. Appellant's second point of error is overruled.

■ In its third and fourth points of error appellant challenges the sufficiency of the evidence, both legally and factually, to support the finding of the jury that Paz had the apparent authority to negotiate and sign the settlement agreement. These challenges to the sufficiency of the evidence are without merit. Even Floyd Bigelow, the president of Porta–Kamp, testified that he authorized Paz, one of his key executives, to settle the lawsuit. He stated that Paz had settled lawsuits for Port-Kamp previously and that he left the details of the settlement to Paz. Appellant points, however, to Bigelow's testimony that he did not authorize Paz to obligate Porta–Kamp to pay $430,000 and further to the dissatisfaction Bigelow had with the settlement figure. This evidence, of course, cannot even be considered on appellant's challenge to the legal sufficiency of the evidence. And, when considered with all the other evidence on appellant's challenge to the factual sufficiency of the evidence, it does not render the verdict contrary to the overwhelming weight of the evidence. Appellant's third and fourth points are overruled.

In its fifth point of error appellant contends the jury's answer to issue two "is contrary to all the evidence or the great

weight and preponderance of the evidence." As stated above, the jury failed to find in answer to the second special issue that Porta–Kamp was fraudulently induced by Atlanta to enter into the settlement agreement. This was an issue on which Porta–Kamp had the burden of proof. We construe this point to require us to exercise our fact-finding jurisdiction. *Traylor v. Goulding,* 497 S.W.2d 944 (Tex.1973). To do so we must examine all of the evidence and then determine therefrom whether the failure of the jury to affirmatively answer the issue is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Traylor,* 497 S.W.2d at 945.

Following cancellation of the shipping contract by appellant, appellee negotiated directly with the Brazilian company which had purchased the housing units and, fact, acted as shipper for two more shiploads of the prefabricated units. The price charged per metric ton on the cargo transported on these shipments was higher than the price between appellant and appellee.

■ Appellant argues it was fraudulently induced to enter into the settlement agreement by the concealment by appellee that it "made more revenue from its direct deal" with the Brazilian company. Appellant argues that had it known that appellee was charging more money per ton to carry these last two shipments then it was charging under their original contract, it would not have entered into the contract. Appellant's argument is not borne out by the evidence. The president of Porta–Kamp testified that he was aware—prior to the execution of the settlement agreement— that appellee was carrying the last two shipments directly for the Brazilian company. Further, there simply is no evidence that because appellee charged more per metric ton on the two final shipments that it "made more revenue from its direct deal" with the Brazilian company. In fact, the president of MTO testified that it did not make more money on the subsequent shipments by dealing directly with the Brazilian company. The failure of the jury to find fraudulent inducement is not against

the great weight and preponderance of the evidence. Appellant's fifth point is overruled.

In its sixth point of error appellant contends the court erred in refusing to submit an issue on whether Porta–Kamp breached its contract with appellee. At trial appellant requested the following instruction:

Do you find from a preponderance of the evidence that Porta–Kamp Manufacturing Company, Inc., breached its settlement agreement with MTO, Inc.?

■ Submission of a "breach of contract" issue such as requested by appellant requires the jury to determine a question of law. *Barton v. Davis,* 441 S.W.2d 299 (Tex.Civ.App.—El Paso 1969, writ ref'd n.r. e.); *Foerster v. Peoples,* 362 S.W.2d 918 (Tex.Civ.App.—Amarillo 1962, no writ). This ultimate question of law is for the court to decide based upon the facts found by the jury. *Fort Worth Neuropsychiatric Hospital, Inc. v. Bee Jay Corporation,* 600 S.W.2d 763 (Tex.1980). The trial court did not err in refusing the requested special issue. Appellants sixth point is overruled.

In its final two points of error appellant contends the court erred in submitting issues on damages and attorneys fees because each of the issues was "an immaterial issue." Appellant argues that without a finding of liability on the unsubmitted breach of contract theory, the issues on liability should not have been submitted. Having found that the court properly refused the requested issue upon which appellant bases his contention for these points, they must be, and are, overruled.

The judgment is affirmed.

## OPINION ON MOTION FOR REHEARING

On May 13, 1988, appellant filed a motion for rehearing and appellee filed its motion in opposition thereto and pursuant to Tex. R.App.P. 84, requests damages because appellant had pursued this appeal for reasons of delay and without sufficient cause. In support of its request, appellee has detailed the history of this case and, while we do

not deem it necessary to recite the delaying tactics throughout this proceeding, we agree this appeal has been taken for delay and without sufficient cause. Therefore, we award to appellee as additional damages ten percent of the total damages of $515,042.55 awarded in the judgment of the trial court.

The motion for rehearing is overruled.